Isaac H. Munro et al., Individually and as Executors of David A. Munro, Deceased, Appellants, v. Syracuse, Lake Shore and Northern Railroad Company, Respondent.

Real property — conditions in deeds defined and distinguished — stipulation in deed to railroad company that grantor and other persons designated should have annual passes for transportation held to be a condition enforceable against successor of such railroad company.

A condition as known in the law of realty is "a qualification or restriction annexed to a conveyance of lands, whereby it is provided that in case a particular event does or does not happen, or in case the grantor or grantee does or omits to do a particular act, an estate shall commence, be enlarged, or defeated." Conditions are not favored by the courts. When, however, the intention of the parties is so clearly expressed as to show that the enjoyment of the estate created by the deed was intended to depend upon the performance of a certain stipulation it is held a condition and not a covenant.

Conditions subsequent necessarily run with the land because they are attached to the title, which may be lost by the failure to observe them. They bind one who accepts the deed; a purchaser from the grantor, with notice; and any assignee or grantee of the grantee in whom the estate on condition is vested.

Plaintiffs' predecessors in title executed a conveyance of lands to a railroad company, the predecessor of defendant. The instrument was signed by both grantor and grantee; it provided that "this grant is made and received, and may be enjoyed by the second party, its successors and assigns, subject to the following conditions, which the party of the second part hereby agrees to perform," and among the "following conditions" was a provision for annual passes to the grantor and others. After that provision was a forfeiture clause specifying that in case of failure "to keep and perform the conditions above expressed and each of them * * * the rights and privileges hereby conferred shall revert to the parties of the first part, their successors, heirs and assigns." Defendant refused to furnish transportation as provided for in the conveyance, and this action was brought to compel it to issue passes to plaintiffs and to restrain defendant from using the land until the contract to that effect is performed. *Held*, that the form, nature and purpose of the stipulation, which was the substantial consideration for the conveyance, show that it is a condition subsequent and not a covenant. There is also an independent covenant to perform the condition in these words: "The terms of this agreement shall be binding upon the heirs, successors and assigns of the parties hereto." While upon

the breach of such condition, the grantor has the right to re-enter, he is not bound to declare a forfeiture and take back the land, but he may require specific performance of the agreement of the grantee, at his election. Hence, the defendant is liable for all conditions broken while it was in possession, and the failure to pay the rent by issuing passes is one of those conditions.

*Munro* v. *Syracuse, L. S. & N. R. R. Co.*, 128 App. Div. 388, reversed.

(Argued October 27, 1910; decided December 13, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 23, 1908, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

On the 22nd of May, 1899, the predecessors of the plaintiffs, as parties of the first part, entered into an indenture with the Syracuse, Lakeside & Baldwinsville Railway Company, the predecessor of the defendant and the party of the second part, under the seals and signatures of both parties thereto. The parties of the first part, after reciting a consideration of one dollar paid by the party of the second part, " and the covenants and conditions herein expressed to be kept and performed by the said second party," granted and released to " the said party of the second part, its successors and assigns, the right to build and maintain a street surface railroad \* \* \* along a strip of land through " the premises in question. After the granting clause the instrument continued as follows : " This grant is made and received and may be enjoyed by the second party, *its successors and assigns, subject to the following conditions, which the party of the second part hereby agrees to perform.*" Four clauses follow, separately numbered, embracing certain conditions and covenants relating thereto. The first clause relates to the removal of two tenement houses from said strip of land to another location. By the second clause the grantee agreed to build and maintain a cattle pass and three farm crossings over its tracks " and also to keep said strip of land at all times well fenced with suitable farm gates at the three crossovers herein mentioned."

15

The third and fourth clauses are as follows : " The party of the second part hereby agrees to issue annually to first parties during the several lives of the parties of the first part a pass over its railway, which pass may be used by said first parties, either of them, or by the wife or any child of. either of them, which pass, however, shall be good only for transportation of one person at a time. It is agreed that if the parties of the first part knowingly permit any person except themselves, their wives or one of their children to use for transportation any annual pass issued to them, the same shall be forfeited. The second party also agrees to issue and furnish to the tenant on said farm, so long as the first parties, or either of them, shall own the same, an annual pass for transportation of said tenant, his wife or any of his children over said railway ; but if said tenant shall permit any person other than himself, his wife or his children to present such annual pass for transportation, the same shall be forfeited. It is agreed that second party shall stop its cars when and where necessary to deliver and receive passengers at said farm and freight also, if freight is carried by said railroad.

"(4) In case said second party shall fail to keep and perform the *conditions* above expressed and each of them, or discontinue the operation of said railway over said land for the space of sixty days, or abandon the same for such street railway purposes, the rights and privileges hereby conferred shall revert to the parties of the first part, their successors, heirs and assigns. It is agreed that the covenants and conditions above expressed shall be considered as conditions precedent to the enjoyment of the grant herein made, and as covenants running with the land so far as they relate to the erection and maintenance of the fences, gates, cattle passes and crossovers herein mentioned, and *the terms of this agreement shall be binding upon the heirs, successors and assigns of the parties hereto.*"

This instrument, after being signed and acknowledged by all the parties thereto, was duly recorded. The strip of land over which the right of way passed embraced from fifteen to

twenty acres out of a farm of 210 acres, the rental value of which, with and without the passes, was excluded by the trial justice upon the objection of the defendant and subject to the exception of the plaintiffs.

The Syracuse, Lakeside & Baldwinsville Railway Company at once entered upon the strip, raised an embankment over part and made a cut through the rest; laid its rails, removed the tenement houses, built the cattle pass and farm crossings, fenced the right of way, operated its railroad and delivered the annual passes as long as it remained in possession. In September, 1905, through the foreclosure of a mortgage upon all the property of the company, title passed to the purchaser, Mr. Beebe, and from him to a new company, known as the Syracuse, Lake Shore & Northern Railroad Company, the defendant herein. Neither the plaintiffs nor their predecessors were parties to the action. The judgment of foreclosure contained a clause allowing the purchaser to "disavow, renounce and relinquish any contract or lease or rights thereunder which are recited" therein, provided the disavowal was filed with the referee appointed to conduct the sale within ten days after the property "was struck off." The contract in question was not recited in the judgment roll and no disavowal was made. The defendant entered into possession of the road and has since operated the same over the strip of land in question, but after it had taken possession and about September 30th, 1905, it "refused to honor or receive the passes held by the plaintiffs and by their tenant * * * and demanded, required and compelled the plaintiffs and said tenant that they and each of them pay the regular fare while riding in its cars upon said railway, and refused and continues to refuse to issue, give or furnish any further passes over its said railroad for the transportation of the plaintiffs or their said tenant or the wife or any child of either of them, though the same was duly demanded."

The plaintiffs still own the farm and continue to lease it. The action was brought to compel the defendant to issue annual passes to the plaintiffs and their tenant, to restrain it

from using the land in question until the contract to that effect is performed and to recover the damages accrued.

The trial justice after finding the foregoing facts in sub-stance found as conclusions of law that "the covenant" relating to passes "was a personal one, in no way binding upon this defendant, its successor in title;" and that the judgment of foreclosure and sale "cannot change personal contracts into covenants running with the land or create a liability against the defendant for the debts of the original company." He directed that the complaint be dismissed, with costs, and the judgment entered accordingly was affirmed on appeal by the Appellate Division, all of the justices con-curring, except the presiding justice, who did not vote. The plaintiffs appeal to this court.

*Donald F. McLennan* for appellants. The agreement at bar was valid, equitable and "binding upon the heirs, suc-cessors and assigns of the parties" thereto. ( *Van Rensselaer* v. *Jewett,* 2 N. Y. 135; Fowler's Real Prop. Law [2d ed.], 181; *Mygatt* v. *Coe,* 124 N. Y. 212; *Bradt* v. *Church,* 110 N. Y. 537; *Towle* v. *Remsen,* 70 N. Y. 303; *Van Rens-selaer* v. *Slingerland,* 26 N. Y. 586; *Van Rensselaer* v. *Dennison,* 35 N. Y. 400; *Stevenson* v. *Haines,* 16 Ohio St. 478; *Cagger* v. *Lansing,* 64 N. Y. 417; *Central Bank* v. *Heydorn,* 48 N. Y. 260; *Hurst* v. *Rodney,* 1 Wash. C. C. 375; *Herbaugh* v. *Zentmyer,* 2 Rawle, 159; *Roger* v. *Ake,* 3 Penn. 461; *St. Mary's Church* v. *Miles,* 1 Whart. 229; *Scott* v. *Lunts,* 7 Pet. 606.) There is nothing in the con-tract at bar which says the covenant to furnish passes shall not run with the land, and where non-performance of a cove-nant is made a condition of forfeiture, it necessarily runs with the land. (*Moore* v. *Pitts,* 53 N. Y. 86; *Post* v. *W. S. R. R. Co.,* 123 N. Y. 580; *Ruddick* v. *R. R. Co.,* 116 Mo. 25; *Helton* v. *R. R. Co.,* 25 Mo. App. 322; *Hoard* v. *R. R. Co.,* 123 U. S. 222; *Hubbard* v. *R. R. Co.,* 63 Mo. 68; *Aiken* v. *A. R. R. Co.,* 26 Barb. 289; *Lytton* v. *G. N. Ry. Co.,* 2 K. & J. 394; *G. N. Ry. Co.* v. *M., etc., Ry. Co.,*

10 Eng. L. & Eq. 11; *Bettridge* v. *G. W. R. Co.*, 3 Grant, 58.) Covenants need not be such as run with the land in order to be binding upon the successors and assignees of the parties. It is sufficient that the defendant had notice of the covenant and accepted the benefits of the agreement. (*Round Lake Assn.* v. *Kellogg*, 141 N. Y. 348; *Hodge* v. *Sloan*, 107 N. Y. 244; *Campbell* v. *Hand*, 49 Penn. St. 234; *Sullivan* v. *Kohoenberg*, 31 Ind. App. 215; *Stephens* v. *Annex Realty Co.*, 173 Mo. 511; *Wittenburg* v. *Mollyneux*, 55 Neb. 429; *B. E. V. R. Co.* v. *N. V. R. Co.*, 171 Penn. St. 284.)

*William Nottingham* for respondent. The complaint was properly dismissed. The provision of the contract in question regarding passes was a personal covenant only of the Syracuse, Lakeside and Baldwinsville Railway, and did not run with the land or bind the defendant, which acquired the property from the purchaser at foreclosure sale, but did not assume or agree to pay the debts or obligations of the former company. (*People* v. *R., W. & O. R. R. Co.*, 103 N. Y. 95; *Hasbrouck* v. *N. P., H. & P. T. Co.*, 98 App. Div. 563; *Hoard* v. *Railway*, 123 U. S. 222; *Dickey* v. *K. C. & I. R. T. Ry. Co.*, 122 Mo. 223; *Helton* v. *Railway*, 25 Mo. App. 322; *Ruddick* v. *Railway*, 116 Mo. 25; *Eddy* v. *Hinnant*, 82 Tex. 354; *Penn. Co.* v. *Railroad*, 108 Penn. St. 621; *Cook* v. *Ry. Co.*, 36 Wis. 45; *Maurer* v. *Friedman*, 110 N. Y. Supp. 310.) The terms of the contract itself, under a well-settled rule of construction applicable thereto, make clear the intention of the parties that the covenant relating to passes should be personal to the corporation making the agreement, and should not run with the land; *expressio unius est exclusio alterius*. (*Baker* v. *Ludlow*, 2 Johns. Cas. 288; *P. P. Co.* v. *Associated Press*, 41 App. Div. 493; *O'Neill* v. *Van Tassel*, 137 N. Y. 297; *Matter of Frothingham*, 63 Hun, 430.)

Vann, J. The first question presented for decision is whether the stipulation relating to passes is a covenant or a

condition. Both grantor and grantee signed the instrument, which provides that "this grant is made and received, and may be enjoyed by the second party, its successors and assigns, subject to the following conditions," and among the "following conditions" was the provision for annual passes. After that provision was a forfeiture clause specifying that in case of failure "to keep and perform the conditions above expressed and each of them * * * the rights and privileges hereby conferred shall revert to the parties of the first part, their successors, heirs and assigns."

A condition as known in the law of realty is "a qualification or restriction annexed to a conveyance of lands, whereby it is provided that, in case a particular event does or does not happen, or in case the grantor or grantee does, or omits to do, a particular act, an estate shall commence, be enlarged, or defeated." (Goodeve on Real Property, 189; Co. Litt. 201a; Anderson's Law Dict. tit. Condition.) Conditions are not favored by the courts, because they tend to destroy estates, and if it is doubtful whether a clause is a covenant or a condition, it will be so construed as to avoid forfeiture. (*Graves* v. *Deterling*, 120 N. Y. 447, 455.) When, however, the intention of the parties is so clearly expressed as to show that the enjoyment of the estate created by the deed was intended to depend upon the performance of a certain stipulation, it is held a condition and not a covenant. (*Cunningham* v. *Parker*, 146 N. Y. 29, 33; 13 Cyc. 689; Devlin on Deeds, § 958.)

The clause in question is expressly named as a condition by the parties, and the right to enjoyment by the grantee, its "successors and assigns," is in terms made subject thereto. There is in addition the right of re-entry for failure "to keep and perform the conditions above expressed," and the stipulation in regard to passes is one of those thus designated. The form, nature and purpose of that stipulation, which was the substantial consideration for the conveyance, show that it is a condition and not a covenant under all the authorities. (*Graves* v. *Deterling*, 120 N. Y. 447; *Plumb* v. *Tubbs*, 41 N. Y. 442; *Gilbert* v. *Peteler*, 38 N. Y. 165,

169; *Cowell* v. *Springs Company*, 100 U. S. 55, 58; *Stuart* v. *Easton*, 170 U. S. 383; Reeves on Real Property, 588.) The learned author last cited says on page 1010 that the " mere use of the word condition will not make a stipulation in a deed of conveyance a condition subsequent, unless it plainly appears that the intention of the parties was that the grantor should have the right to re-enter if it were broken by the grantee. The clearest and most emphatic method of showing that intention is, of course, by a statement, in or connected with the words that are meant to create a condition, that the right of re-entry is reserved for its breach."

All conditions are either precedent or subsequent, and as the condition in question was to be performed after the right granted had vested in the grantee, it cannot be termed a condition precedent. Obviously it is a condition subsequent, because the conditional event or the issue of passes was not to happen until after the principal event or the vesting of the right to use and possession. Performance thereof did not create and could not enlarge the estate, but failure to perform would defeat it at the election of the grantors. Hence, it could not be included in the enumeration of covenants and conditions relating to cattle passes, fences, etc., for they are to be " considered as conditions precedent " and also as " covenants running with the land." The terms and conditions which are not both conditions precedent and covenants running with the land, are not mentioned in the classification either as precedent or subsequent, and the parties did not stipulate that the clause in question should or should not run with the land but left that to be determined from its nature.

Conditions subsequent, however, necessarily run with the land because they are attached to the title, which may be lost by the failure to observe them. They " bind one who accepts the deed; a purchaser from the grantor, with notice; and any assignee or grantee of the grantee in whom the estate on condition is vested." (13 Cyc. 694, and cases cited.)

There is not only the condition subsequent, but there is an

independent covenant to perform it in these words : " The terms of this agreement shall be binding upon the heirs, successors and assigns of the parties hereto." Clearly said condition is one of the terms of the agreement, which were thus made binding upon the successors and assigns of the original grantee. The old railroad company promised for itself and its assigns, and the new company by accepting a transfer of its rights and entering into possession of the land made the promise its own *durante possessione.* As the successor and assignee of the old company it is in actual possession and enjoyment of the subject of the grant, and must observe the conditions upon which the grant was made as long as it remains in possession. While the grantors have the right to re-enter, they are not bound to declare a forfeiture and take back the land after it has been rendered worthless for farming purposes or for any use except as a railroad, but they may require specific performance of the agreement at their election. As long as the new company holds, occupies and enjoys under the deed, it stands in the shoes of the old company and performance· to the same extent and of the same nature can be required from it as from its predecessor.

While the grant in question is not a lease in the ordinary sense, because it has no term of years, still it is in the nature of a lease reserving a perpetual rent. The consideration, as recited in the deed, is " one dollar  *  *  *  and the covenants and conditions herein expressed to be kept and performed by the said second party." Aside from the conditions which the law requires a railroad company to perform when the right of way is acquired by condemnation, the provisions relating to fences and the stoppage of cars to receive freight and passengers, which are perpetual, and that relating to passes, which is for an indefinite period, are the main consideration for the right granted. Obviously the other covenants and conditions are comparatively slight in value. Rent is the compensation for the use of land and is payable either in money or in services, cattle, grain and the like according to agreement. Many early leases in this state were in the

form of grants with rent reserved, payable by acts of service
or in specific articles of the kind mentioned.   While the rent
reserved in the case before us was perpetual in part and
indefinite as to the rest, still the reservation was in a convey-
ance not for a term of years, or for life, but forever.   All
the rent was perpetual in principle because the deed was per-
petual.   "Perpetual rents are covenants real which run with
the land, and are binding upon the heirs and assigns of the
covenantor successively during their respective ownerships."
(Fowler's Real Property Law, 189, 197.)   The grant in ques-
tion falls within the principle of the noted Van Rensselaer
cases which the learned author cites to support the propo-
sition quoted, and which he says " are among the most inter-
esting and instructive in our judicial history, and justly
entitled to be regarded as among the most wisely decided
cases of any age or country."   ( *Van Rensselaer* v. *Snyder*,
13 N. Y. 299 ; *Van Rensselaer* v. *Ball*, 19 N. Y. 100 ; *Van
Rensselaer* v. *Read*, 26 N. Y. 558, 564 ; *Van Rensselaer* v.
*Slingerland*, 26 N. Y. 580 ; *Van Rensselaer* v. *Barringer*,
39 N. Y. 9 ; *Bradt* v. *Church*, 110 N. Y. 537.)

Whatever form of payment may be prescribed, the law
regards rent as issuing out of the land, and, hence, the land
cannot be held and enjoyed by the grantee or lessee, or by
the assignee of either, without paying the rent reserved.   The
defendant is the grantee and assignee of its predecessor, and
as such owns its rights under the instrument in question.
While an assignee may escape future liability by assigning
the lease and surrendering possession, he is liable for all the
rent which accrues while he is in possession as such.   The
defendant is liable for all conditions broken while it was in
possession, and the failure to pay the rent by issuing passes is
one of those conditions.   As was said by Judge DENIO in *Van
Rensselaer* v. *Read* (26 N. Y. 558, 564): " The covenants
entered into by the grantee of the lands, in behalf of himself,
his heirs and assigns, are covenants real which run with the
land, and are binding upon the heirs and assigns of the cove-
nantor, successively as to all breaches of such covenants which

occur during their respective ownership of the lands." While the condition needs no covenant to support it, as the condition runs with the land, the covenant to keep the condition runs with it also.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, WILLARD BARTLETT and COLLIN, JJ., concur; HISCOCK, J., not sitting.

Judgment reversed, etc.