### HENNEKY v. STARK.

(Supreme Court, Special Term, Wayne County. March, 1911.)

1. WATERS AND WATER COURSES (§ 165*)—CONTRACT ALLOWING FLOODING OF LAND—PROVISION FOR GRADING—TIME FOR PERFORMANCE.

The provision of a contract by which plaintiff gives defendant the right to raise the waters of a pond during the winter months of several years that defendant shall grade up bridge approaches on plaintiff's land, which the raising of the water floods, binds defendant to do the grading in a reasonable time.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 213; Dec. Dig. § 165.*]

2. WATERS AND WATER COURSES (§ 165*)—FLOODING LANDS—CONTRACTS—RIGHT TO TERMINATE—WAIVER.

January, 1909, the parties made a contract, whereby plaintiff gave defendant the right to raise the waters of a pond during the winter months for 10 years, commencing November 20, 1909, defendant agreeing to pay plaintiff $25 per year in advance on November 20th of each year, and also agreeing to grade up the bridge approaches on plaintiff's land, which the raising of the water would flood. Held, that while plaintiff by accepting $25 on November 30, 1909, waived his right to elect to end defendant's flowing privilege because of defendant's prior omission to grade the approaches, the duty to do the grading continued, and likewise, for subsequent omission of the duty, any right which had existed to terminate the privilege for omission of such duty.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 213; Dec. Dig. § 165.*]

3. WATERS AND WATER COURSES (§ 165*)—RIGHT TO FLOOD LAND—EASEMENT.

The privilege given by contract to defendant to raise the waters of a pond during the winter months only, for a number of years so as to flood plaintiff's land is an intermittent easement.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 165.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. WATERS AND WATER COURSES (§ 165*)—FLOODING LAND—CONTRACTS—COVE-
NANTS OR CONDITIONS.

Under a contract by which plaintiff gives to defendant the privilege to
raise the waters of a pond during the winter months for a number of
years, defendant to pay $25 per year in advance each year, and grade up
the bridge approaches on plaintiff's land, which the raising of the water
would flood, defendant's engagement to grade up the approaches is not
a mere independent contract, for breach of which only an action for dam-
ages will lie, but is a condition, on the performance of which, in good
time and in a reasonable manner, defendant's right to continue to flow
the lands depends.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 213; Dec. Dig. § 165.*]

5. WATERS AND WATER COURSES (§ 165*)—FLOODING LANDS—CONTRACTS—TER-
MINATION FOR NONPERFORMANCE.

The engagement of defendant in a contract giving him the privilege to
flood plaintiff's land for a number of years to grade up the bridge ap-
proaches on plaintiff's land, which the raising of the water would flood,
being a condition on the performance of which in a reasonable time his
right to continue to flow the lands depends, the mere election of plaintiff,
on defendant's failure to perform in a reasonable time, to terminate, and
service of notice thereof on defendant, without more, at once terminates
the right.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 213; Dec. Dig. § 165.*]

6. WATERS AND WATER COURSES (§ 165*)—FLOODING LANDS—CONTRACTS—TER-
MINATION—RESTORATION OF RIGHT.

Defendant's privilege to flood plaintiff's land, being terminated by elec-
tion of plaintiff, and service of notice thereof, because of defendant's fail-
ure to perform in a reasonable time the condition, on which the privilege
was granted, that defendant grade up the bridge approaches on plaintiff's
land, which would be flooded by the raising of the water, is not restored
by defendant's subsequently doing the grading without plaintiff's consent,
and against his protest.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§ 213; Dec. Dig. § 165.*]

7. EASEMENTS (§ 31*)—FORFEITURE FOR BREACH—RELIEF.

Equity will not relieve one from forfeiture of his easement for nonper-
formance in a reasonable time of a condition, where there was no good
excuse for his failure.

[Ed. Note.—For other cases, see Easements, Dec. Dig. § 31.*]

Action by John Henneky, Jr., against George M. Stark for in-
junction to restrain flooding of land. Judgment for plaintiff.

F. E. Converse, for plaintiff.
Chamberlain & Page, for defendant.

SUTHERLAND, J.   An injunction should be awarded in this
case restraining the defendant from flooding the land of the plaintiff
with water set back from the dam maintained by defendant on Sal-
mon creek in the town of Williamson. This creek runs through plain-
tiff's farm. The dam is below, on land owned by the defendant, who
is a farmer and dealer in ice. Formerly this dam furnished power for
a sawmill, which it would appear has not been operated during the
last 20 years, but the dam has been utilized for several years in the
winter time by the defendant to form an ice pond, the defendant clos-

ing the sluiceway and raising the dam by flushboards in November and opening the dam after the ice cutting season ends in the spring. On the plaintiff's farm a bridge spans the creek, the approach to which is through a lane that crosses a natural depression on each side of the bridge; and, when the water backs up sufficiently from the dam, it overflows the approaches to the bridge and other land of the plaintiff. The parties have had numerous disputes over their respective rights, and some litigation had ensued when on January 28, 1909, a written contract was entered into by which the plaintiff in the following terms did—

"give grant and convey [unto the defendant] the right and privilege of flooding about one acre of land on the premises of the party of the first part * * * so that the party of the second part may maintain the ice pond as at present maintained, on his premises * * * for the term of ten years from the 20th day of November, 1909, with the privilege of five additional years, if he so desires, provided the said party of the first part is the owner of his said premises at the end of said ten years period.

"Said party of the second part agrees to lower the water so that said flooding will not be continued beyond March 15th in any one year, unless weather conditions in such year prevent the harvesting of sufficient ice by said party of the second part up to that date.

"Said party of the second part agrees to pay to said party of the first part the sum of $25.00 per year to be paid in advance on the 20th day of November in such year, and to permit said party of the first part to take from his ice house one ton of ice per year during said term, the said ice to be so taken at such times as said party of the second part shall be present at his said ice house.

"Said party of the second part further agrees, to grade the lane of said party of first part the full width of the same, as it now exists, from bank to bank of the depression on each side of the bridge as it now stands to a level with said bridge.

"Said party of the second part shall have the right to raise his dam so as to flood additional land of said party of the first part, provided, however, that he shall raise said lane and bridge in such event, to such a height that no part of either said lane or bridge shall be under water, and that said water shall not extend to nor surround any of the fruit trees of said party of the first part."

[1] No time was specified in the contract when the grading should be done, but it is obvious that the defendant was bound to complete it within a reasonable time (Trustees, etc., v. City of New York, 173 N. Y. 38, 65 N. E. 853, 93 Am. St. Rep. 569), in order to minimize the damage caused to plaintiff by the exercise of the flowage privilege by giving him convenient access to each part of his farm, without being impeded by the water backing up and overflowing the approaches to the bridge. I am satisfied upon the evidence that the defendant did not do the grading of the lane within a reasonable time, and in the manner contemplated by the parties, and had not done so up to and including November 30, 1910, and that for his failure to do so no reasonable excuse has been shown.

[2] November 30, 1909, plaintiff accepted $25, the amount due for the winter of 1909–10. This waived his right to then elect to end the flowing privilege for the omission up to that time to grade the lane; but the duty to complete the grading continued, and no good reason is shown why it was not done in the summer of 1910, and before November 30, 1910, when the plaintiff determined to declare the priv-

ilege at an end. On or about that day, after the defendant had com-
menced to flow the land preparatory to the winter's ice business, the
plaintiff served upon the defendant a written notice that the plaintiff
had elected to terminate defendant's privilege to flow the land, be-
cause of his failure to grade the land as required by the contract,
and because he had failed to pay the $25 due November 20, 1910.
The defendant then tendered the $25, which was declined by the plain-
tiff; and before the commencement of this action, and early in De-
cember, 1910, the defendant, without plaintiff's permission and against
his protest, drew in stones and dirt and raised the grade of the lane
to about the height of the bridge and for a width of 12 feet, which
would have been a substantial compliance with the conditions of the
contract had the grading been done within a reasonable time, and be-
fore the service of the notice. Notwithstanding this, the plaintiff
insisted that the flowing privilege had been forfeited, and this action
has been brought to procure an injunction restraining the defendant
from the further exercise of that privilege.

[3] On behalf of the defendant, it is claimed that the right confer-
red to flow the land is an irrevocable easement, and the engagement
of the defendant to pay $25 per year and grade the lane are independ-
ent covenants upon which, if broken, an action at law for damages
could be maintained, but are not conditions either precedent or sub-
sequent, for the breach of which the easement granted to the defend-
ant can be forfeited. The privilege conferred upon defendant appears
to me to be in the nature of an intermittent easement, to be enjoyed
during certain months only each year, for a term of years. [4] On
the other hand, the defendant's engagement to grade the lane to the
height of the bridge was something more than a mere independent
covenant. It was a condition, the performance of which would ma-
terially affect the character of the servitude imposed upon plaintiff's
land, for it would make tolerable a privilege which otherwise would
result in a very serious inconvenience. To flow the land without the
grading of the lane to the required height would and did compel the
plaintiff to drive or walk through the water in going from one part of
his farm to the other.

I do not forget that forfeitures are not favored, and that where
there is doubt as to whether the engagement of a grantee should be
considered as a mere collateral covenant with a right of damages for
a breach thereof, or as a condition upon the breach of which a for-
feiture may be declared, the law resolves the doubt in favor of the
continuance of the estate granted. But in this case it seems to me
the engagement of the defendant to grade the lane was a condition
upon the performance of which, in good time and in a reasonable man-
ner, his right to continue to flow the lands necessarily depended.
Munro v. S. L. S. & N. R. Co., 200 N. Y. 224, 93 N. E. 516.

[5] If that is the correct construction to place upon the contract,
it follows that the election of the plaintiff and the service of the no-
tice terminated at once the right of the defendant to continue to flow
the plaintiff's land. Kenner, etc., v. Am. Contract Co., 9 Bush (Ky.)
202; Parmelee v. O. & S. R. Co., 6 N. Y. 74; Alleghany Oil Co.
v. Bradford Oil Co., 21 Hun, 26, affirmed 86 N. Y. 638.

No action of ejectment was necessary; and it has been held that in such a case ejectment could not be maintained because the plaintiff is in possession and has always been in possession of the lands flowed (Wilklow v. Lane, 37 Barb. 244); and, of course, no specific act in the nature of an entry upon the land flooded was essential in order to terminate said privilege. "The law never requires a party to enter upon himself." Alleghany Oil Co. v. Bradford Oil Co., supra.

[6] If the flowing privilege was at an end once for all upon the service of the notice, then the subsequent act of the defendant filling up the grade without plaintiff's consent would not restore the rights which had been lost. [7] It has been said that equity in a proper case may relieve a party from a forfeiture which he has excusably incurred. Not only is there no· good excuse made here, but the uncontradicted evidence is that although the preliminary injunction granted in this case, as modified by this court, forbids the defendant, pendente lite, from raising the water above the grade of the lane or bridge, the water has been so raised so that in January, 1911, it was over six inches above the bridge. The ·boards closing the 16-foot sluiceway were not removed till February 28th, so that it would seem that the defendant has not been so attentive to the orders of the court as to invite its equitable interposition to relieve him from his forfeiture, if such power really exists.