NEW EDGEWOOD LAKE CORPORATION, Respondent, *v.* KINGSTON TRUST COMPANY and Another, Appellants.

Third Department, January 15, 1936.

*Charles W. Walton* [*Kenneth S. MacAffer* of counsel; *Carl O. Olson* with him on the brief], for the appellant Kingston Trust Company.

*Speenburgh & Speenburgh,* for the appellant Ethel Silberman.

*Max J. Herman* [*Charles R. O'Connor* of counsel], for the respondent.

CRAPSER, J. This action is brought by the plaintiff against the defendants for a permanent injunction restraining the appellants from interfering with an alleged easement consisting of the privilege of boating and bathing on the waters of Lake Switzerland, existing in favor of respondent's hotel premises, and restraining the defendants-appellants from draining the Lake Switzerland property of water.

The plaintiff bases its cause of action upon a deed made the 6th day of September, 1906, by Durward B. Kelly to Charles H. Vermilyea containing the following description:

" The reservation of water rights and privileges as mentioned and described in a deed from Henry B. Armstrong and Mary Drayton, his wife, to William Doolittle, dated April First, 1861, and recorded in Delaware County Clerk's Office on the 9th day of May, 1884, together with the right to dam the stream and to gravel from either side of it as expressed in said deed, provided said

party of the Second Part, his grantees, heirs or assigns, shall build a dam and construct or build a lake on said reservation within three years from the date of this instrument, and it is expressly agreed and understood by and between the parties hereto and the said party of the Second Part for himself, his heirs and assigns hereby agrees that in the event a lake is not constructed on said reservation within the said three years, that at the expiration of said three years, the reservation property rights and privileges herein mentioned shall at once revert to the party of the First Part, their heirs or assigns. Also granting to the party of the Second Part, his heirs and assigns, the right and privilege of erecting and maintaining and removing bath and boat houses upon the grounds of the party of the.First Part immediately adjoining said reservation in such numbers and in such places as may be necessary for the free use and enjoyment of and by the said party of the Second Part, his heirs and assigns, to be used for boating and bathing purposes only, together with ingress and egress from the public highway across the lands of the party of the First Part at any and all times in going to and from said lake. The parties of the First Part herein, however, reserve for themselves, their heirs and assigns, the right and privilege of using said lake for boating and bathing purposes and to use the same for the entertainment of the regular guests of his house commonly known as ' The Edgewood,' except that the party of the First Part, his heirs or assigns, shall not use said lake as a boating or bathing resort for the purpose of making money by the means of renting boats or bathing privileges. The party of the First Part also reserves for himself, his heirs and assigns the right to harvest necessary ice from said lake to supply his house ' The Edgewood.' Also for the private use of said party of the First Part, his heirs and assigns.

" It is distinctly understood and expressly agreed that in the event that said reservation ceases to be used as a lake by the said party of the Second Part, his heirs or assigns, the said reservation, with all the rights and privileges, immediately reverts and becomes the property of the said Durward B. Kelly, his heirs and assigns.

" Together with the appurtenances and all the estate and rights of the parties of the First Part in and to said premises. To Have and to Hold the above granted, bargained and described premises unto the said party of the Second Part, his heirs and assigns forever."

The dam was constructed by the grantee in the Kelly deed in 1906 or 1907 and has since been maintained. From time to time the water has been let out of the lake for the purpose of making repairs until 1934 when a question was raised as to the safety of the

dam and the water was let out of the lake because it was deemed unsafe to permit the lake to remain full as it had in previous years.

It is claimed by the respondent that the deed from Kelly to Vermilyea created a covenant running with the land for the benefit of the dominant estate, being the lands owned and occupied by the respondent.

The appellants claim that the above deed created a condition subsequent and does not sustain the present action of the plaintiff against the defendants.

Much of the record is taken up trying to establish the line between the Wechsler and the Kelly property. The evidence is confusing and not satisfactory or convincing.

This is not an action in ejectment or to quiet title and it is not necessary for us to pass upon the location of the line between the parties in order to decide this case.

The deed from Kelly to Vermilyea provided that the latter should build a dam and construct or build a lake on said reservation within three years from the date of the instrument and in case he failed to do so the reservation property rights and privileges at once reverted to Kelly. It was further provided that in the event such reservation ceased to be used as a lake by the grantee, his heirs or assigns, the reservation, with all the rights and privileges, immediately reverted to and became the property of the said Kelly, his heirs and assigns. The deed contains a condition subsequent and not a covenant. There is no agreement on the part of the grantee or his successors or assigns to make repairs or to continue to maintain the dam or the lake.

The referee found, at the request of the defendant Kingston Trust Company, that the deed from Kelly to Vermilyea did not contain any covenant or agreement whereby the said Vermilyea covenanted or agreed to maintain forever the waters impounded in the lake or to repair the dam.

Under a breach of a condition subsequent, the measure of damages, when the defendant is in possession, are the rents and profits, the value of the use and occupation of the land from the commencement of the action.

"A clause in a deed of land to a city providing that the land ' is to be used for the purpose of building a city hall thereon, and this conveyance is made upon the express condition that in case the said plot of ground above described shall ever cease to be used by said Long Island City for a city hall or other similar city buildings, then, and in that case, the said plot of land shall revert back to the parties hereto of the first part as if this conveyance had not been made,' creates a condition subsequent and requires the grantee to comply therewith within a reasonable time. * * *

" The grantor is not compelled to demand performance before commencing an action of ejectment to recover the land." (*Trustees of Union College* v. *City of New York*, 173 N. Y. 38; *Upington* v. *Corrigan*, 151 id. 143; *Carruthers* v. *Spaulding*, 242 App. Div. 412.)

" Plaintiff's ancestor conveyed the premises in controversy to the trustees of a church, the granting part of the conveyance providing that the land was designed for church purposes, and that it was understood and agreed that the seats should be forever free, and, if the seats should be rented or sold, then the premises should revert to the party of the first part or heirs. *Held* a condition subsequent, and that the title vested absolutely in the grantee subject only to be forfeited by a breach of such condition. * * *

" Where a deed provided for reversion to the grantor or her heirs on breach of a condition subsequent, the right of the heir to enforce forfeiture of a condition does not pass to him by descent, but merely as a representative of the original grantor, and hence such right may neither be assigned to nor enforced by a stranger." (Quotation from headnote in *Southwick* v. *New York Christian Missionary Society*, 135 N. Y. Supp. 392; 151 App. Div. 116; affd., 211 N. Y. 515.)

"A condition as known in the law of realty is ' a qualification or restriction annexed to a conveyance of lands, whereby it is provided that in case a particular event does or does not happen, or in case the grantor or grantee does or omits to do a particular act, an estate shall commence, be enlarged, or defeated.' Conditions are not favored by the courts. When, however, the intention of the parties is so clearly expressed as to show that the enjoyment of the estate created by the deed was intended to depend upon the performance of a certain stipulation it is held a condition and not a covenant." (*Munro* v. *Syracuse, L. S. & N. R. R. Co.*, 200 N. Y. 224; *Palmer* v. *Fort Plain & Cooperstown Plank Road Co.*, 11 id. 376, 385.)

" The right to take advantage of a breach of a condition subsequent is neither an estate nor an interest in real property, nor an assignable chose in action. The right to re-enter and to insist upon a forfeiture of an estate, upon breach of such a condition, can only be reserved for the benefit of the grantor and his heirs, and an assignee, as a stranger to the title, cannot take advantage of it." (*Fowler* v. *Coates*, 201 N. Y. 257; *People* v. *Wainwright*, 237 id. 407.)

A condition subsequent arises when it is found from the nature of the act to be performed and the time required for its performance that the estate is intended to vest, the grantee to perform after taking possession. (8 R. C. L. 1109; R. C. L. Permanent Supplement, p. 2390.)

The defendant Kingston Trust Company had transferred the property to the defendant Ethel Silberman and she is named as one of the defendants in the case. Both of the defendants made a motion at the opening of the case for the dismissal of the complaint on the ground that it failed to state a cause of action. This motion by the defendants was based upon the contention that the deed in question contained a condition subsequent. The motion was renewed again at the end of the plaintiff's case and again at the close of all the evidence. Failure to grant the motion was error. The defendants were entitled to the granting of the motion dismissing the complaint upon the merits.

I favor the reversal of the judgment upon the law and facts and the granting of defendants' motion to dismiss the complaint upon the merits, with costs in favor of the appellants and against the respondent.

McNamee and Heffernan, JJ., concur; Hill, P. J., concurs, in a memorandum, in which Rhodes, J., concurs.

Hill, P. J. (concurring). Respondent, the owner of a summer hotel near Fleischmanns, N. Y., that fronts upon an artificial lake, has been given, by the judgment appealed from, damages and costs and injunctive relief that directs appellants to keep the water in the lake at the level of the spillway. The damages were awarded because of loss of profits in the operation of the hotel during the summer of 1934 while the lake was drained.

The theory upon which the suit was brought and which was adopted by the official referee in deciding it, was that the acceptance of a quitclaim deed dated September 6, 1906, given by Kelly to Vermilyea purporting to convey water rights, privileges and " reservations " (but no land), gave an easement in connection with the lake formed by the erection of the dam in 1907 to Kelly's adjoining lands now owned by respondent through mesne conveyances, and established an affirmative covenant which required appellants, now the owners of the lake through mesne conveyances from Vermilyea, to keep it filled to the level of the spillway. Respondent's easement is claimed to be valuable because of the æsthetic features and for the use by guests at the hotel for boating and bathing. The deed contains a provision that in the event the " reservation " thereby conveyed was not used by Vermilyea, his heirs or assigns, to " build a dam and construct or build a lake " within three years, all rights and privileges granted immediately reverted to Kelly, his heirs and assigns.

Some of the findings of fact made by the trial court I regard as immaterial and others as not sustained by the evidence. However,

giving respondent the benefit of all the findings to their fullest import, there does not exist a legal or equitable right to the judgment.

This record contains 545 printed pages. There are fifty-seven unprinted exhibits, mostly deeds and mortgages. The " decision " is made up of twelve numbered paragraphs, largely conclusions of law. The " findings and conclusions " contain sixty-four numbered paragraphs under the heading " Findings of Fact " and twelve numbered paragraphs under the heading " Conclusions of Law." In this concurring memorandum I desire to eliminate all nonessential facts, because in my opinion the issue is narrow and the rights, if any, to which respondent is entitled in this suit are founded entirely upon the quitclaim deed of September sixth which I have earlier mentioned. However, it should be said that Vermilyea, appellants' predecessor in title, on September 18, 1906, received from one Wechsler a conveyance of lands to be submerged by a dam across the Portertown stream. This deed is asserted by appellants to be the source of title to the land and premises.

The quitclaim deed of September 6, 1906, given by Kelly to Vermilyea purports to convey " water rights, privileges and reservations " as follows: " The reservation of water rights and privileges as mentioned and described in a deed from Henry B. Armstrong and Mary Drayton his wife, to William Doolittle, dated April First, 1861, and recorded in Delaware County Clerk's Office on the 9th day of May, 1884, together with the right to dam the stream and to gravel from either side of it as expressed in said deed, provided said party of the Second Part, his grantees, heirs or assigns, shall build a dam and construct or build a lake on said reservation within three years from the date of this instrument, and it is expressly agreed and understood by and between the parties hereto and the said party of the Second Part for himself, his heirs and assigns hereby agrees that in the event a lake is not constructed on said reservation within the said three years, that at the expiration of said three years, the reservation property rights and privileges herein mentioned shall at once revert to the party of the First Part, their heirs or assigns."

So far as I have quoted from the deed, Kelly retained a right of re-entry if there was a violation of a condition subsequent, for the conveyance was as complete as he could make, and the estate granted to Vermilyea could be defeated only by his failure to perform the subsequent condition and agreement to build the dam. (*Towle* v. *Remsen*, 70 N. Y. 303; *Trustees of Union College* v. *City of New York*, 173 id. 38; *Calvary Presbyterian Church* v. *Putnam*, 249 id. 111.) The benefit retained by the grantor through the

making of a condition subsequent is reserved only to himself and his heirs. It is a non-assignable right and no person other than the grantor or his heirs may re-enter and divest the grantee of the right of occupancy. ( *Upington* v. *Corrigan*, 151 N. Y. 143; *Carruthers* v. *Spaulding*, 242 App. Div. 412; *Milan* v. *Towner*, 229 id. 428.) Respondent's assignee received no enforcible right by reason of the reservation.

The remainder of the September sixth deed, except the formal and usual provisions of a quitclaim deed, I quote:

"Also granting to the party of the Second Part [Vermilyea] his heirs and assigns, the right and privilege of erecting and maintaining and removing bath and boat houses upon the grounds of the party of the First Part [Kelly] immediately adjoining said reservation in such numbers and in such places as may be necessary for the free use and enjoyment of and by the said party of the Second Part, his heirs and assigns, to be used for boating and bathing purposes only, together with ingress and egress from the public highway across the lands of the party of the First Part at any and all times in going to and from said lake. The parties of the First Part herein, however, reserve for themselves, their heirs and assigns, the right and privilege of using said lake for boating and bathing purposes and to use the same for the entertainment of the regular guests of his house commonly known as ' The Edgewood,' except that the party of the First Part, his heirs or assigns, shall not use said lake as a boating or bathing resort for the purpose of making money by the means of renting boats or bathing privileges. The party of the First Part also reserves for himself, his heirs and assigns the right to harvest necessary ice from said lake to supply his house ' The Edgewood.' Also for the private use of said party of the First Part, his heirs and assigns.

" It is distinctly understood and expressly agreed that in the event that said reservation ceases to be used as a lake by the said party of the Second Part, his heirs or assigns, the said reservation, with all the rights and privileges, immediately reverts and becomes the property of the said Durward B. Kelly, his heirs and assigns."

Respondent argues that this portion of the deed established and gave to its land an easement and established a covenant running with appellants' lands which requires the owner thereof to perform the affirmative act of keeping the dam in repair at all times and in perpetuity to the end that respondent's lands may enjoy the boating, bathing and ice harvesting privileges mentioned. This claimed easement and covenant rests entirely upon and is a part of the condition subsequent earlier discussed, for there could be no boating,

bathing or ice harvesting unless the condition subsequent was performed by creating the lake. It did not pass to the respondent by assignment. By the terms of the deed, when the premises granted ceased to be used as a lake there was a reverter. This indicates an intention to create a condition and not a covenant. (*Munro* v. *Syracuse, L. S. & N. R. R. Co.*, 200 N. Y. 224; *Trustees of Union College* v. *City of New York, supra; Carruthers* v. *Spaulding, supra.*) However, if we sever the deed into two parts, as I have in quoting, and disregard the earlier quotation while considering the second, a covenant is not established. A covenant which compels the owner of a servient estate to do an act thereon for the benefit of the dominant estate is not favored, either in law or equity, and is not recognized at common law with a few definite exceptions like the maintenance of boundary fences, the repair to private ways and party walls. (*Miller* v. *Clary*, 210 N. Y. 127; *Morehouse* v. *Woodruff*, 218 id. 494; *Greenfarb* v. *R. S. K. Realty Corp.*, 256 id. 130.) "A covenant to repair [a driveway] may be made by apt words to attach itself to the land with the result that the burden of compliance will be charged upon successive owners. * * * The trouble with the plaintiff's case is that apt words are lacking in the covenant in suit." (*Levy* v. *Schnurmacher Const. Corp.*, 255 N. Y. 83.) Words apt or otherwise requiring the owner of this lake property to do the affirmative act of repairing the dam for the benefit of respondent's premises are entirely lacking.

The finding made by the trial court that the easterly part of the dam and lake is upon lands conveyed to respondent by Kelly is immaterial, for if there be an encroachment, it gives no legal or equitable right to this judgment which requires appellants to maintain the dam for respondent's benefit. The remedy for an encroachment is an action of ejectment. Likewise, the finding that appellants have gained a prescriptive right by adverse use to flood a portion of respondent's land furnishes no support for the injunctive relief that the dam be maintained.

Kelly's claim of title to the water rights, privileges and reservations which he quitclaimed to Vermilyea by the deed of September sixth is not sustained by the proof in the record. The lands of appellants and respondent were, until April 1, 1861, owned by Henry Armstrong. On that date he conveyed the western portion of his lands to Doolittle. These premises, by mesne conveyances, passed to Vermilyea and later to appellants. The Portertown stream ran through the land. The deed contained the following reservation: " Reserving nevertheless, all mill sites with the right to dam the stream, to haul stone and timber on the east of it to the water edge & to gravel from either side." The source of the Kelly title is by

mesne conveyances from the heirs and devisees of Henry Armstrong. They conveyed the easterly portion of the farm on April 27, 1893. The finding or theory that the reservations in the 1861 deed were appurtenant to the easterly half of the Armstrong lands is not sustained by the proof. No mention of these mill sites is made in any deed in the Kelly chain of title.

The finding that the conveyance from the appellant trust company to appellant Silberman is colorable and ineffective to convey the premises is not sustained by the proof.

I favor a reversal of the judgment on the law, and a dismissal of the complaint. However, I concur in the reversal of the findings of fact as mentioned in the decision.

RHODES, J., concurs.

Judgment reversed on the law and facts, with costs, and motion to dismiss the complaint, on the merits, granted, with ten dollars costs. The court reverses findings of fact contained in the decision numbered five to forty-four, inclusive; also findings of fact numbered forty-six to sixty-four, inclusive; the court also disapproves of and reverses conclusions of law, contained in the decision, numbered one to twelve, inclusive.