The Village of Fleischmanns, New York, Plaintiff, *v.* Nathan Hyman, Kingston Trust Company, New Edgewood Lake Corporation and Clarence Voss, Receiver, Defendants.

Supreme Court, Trial and Special Term, Delaware County, May 8, 1937.

*Speenburgh & Speenburgh*, for the plaintiff.

*Wiswall, Walton, Wood & MacAffer* [*Carl O. Olson* of counsel], for the defendant Kingston Trust Company.

*Max J. Herman*, for the defendant New Edgewood Lake Corporation.

*N. Le Van Haver*, for the defendant Clarence Voss, receiver.

McNAUGHT, J.  The plaintiff seeks an injunction to enforce an ordinance, effective January 2, 1937, adopted by the village of Fleischmanns through its duly constituted authorities, in relation to the construction, maintenance and operation of dams, bulkheads and other similar structures, over, in, or across waters within the village of Fleischmanns.

The defendant Hyman is the owner of the premises upon which the dam involved in this action is located.  He is the person who maintains it.

The defendant Kingston Trust Company is the holder of a mortgage which is a lien on the premises of Hyman where the dam is located.  An action to foreclose such mortgage is now pending. In such action defendant Voss has been appointed receiver.

The defendant New Edgewood Lake Corporation is the owner of premises adjacent to the premises of Hyman, and has heretofore claimed some boating and bathing privileges upon the lake created by the impounding of the waters of Portertown creek, or the Bushkill.

In the year 1906 or 1907 one Vermilyea, being the then owner of the premises now in the possession of the defendant Hyman, erected thereon a dam impounding the waters of the Portertown stream and creating a lake which has been known as Lake Switzerland.  The body of water so created impounds waters of a stream passing through the main residential and business section of the village of Fleischmanns.  In previous litigation relative to rights of adjacent owners to use of the lake so created for boating and bathing purposes, have been involved questions as to the dangerous condition of the dam impounding such waters.  Such litigation arose in the year 1934.  (*New Edgewood Lake Corporation* v. *Kingston Trust Co.*, 246 App. Div. 163.)

No steps having been taken to reconstruct or repair such dam, the ordinance in question was adopted by the board of trustees of the village of Fleischmanns, and took effect on the 2d day of

January, 1937. Thereafter and on the 7th day of January, 1937, this action was commenced by the issuance of a summons and verification of a complaint, which was served upon the defendants Hyman and Voss on the 8th day of January, 1937.

The evidence fully warrants a finding that the dam in question is being maintained and is now in an unsafe and dangerous condition. The location of the dam and the body of water impounded by it is such that its failure to hold such waters would cause great property damage and possible loss of life in the village of Fleischmanns. The existing conditions, the evidence in this case discloses, fully warrant anxiety on the part of the citizens of Fleischmanns over the possible destruction of life and property which may be caused as a result of the unsafe and dangerous condition of the dam.

The plaintiff to succeed must establish not only that the dam is unsafe and being maintained in a dangerous condition, but likewise must establish that the ordinance in question is a proper and authorized exercise of municipal power vested in the plaintiff village. This is true whether a defendant has answered or defaulted, the case not being one in which judgment can be granted without proof of the essential facts to entitle the plaintiff to the relief sought.

The plaintiff contends that the enactment of the ordinance is fully authorized by the provisions of subdivision 59 of section 89 and section 90 of the Village Law. Such provisions in substance authorize the board of trustees of a village, after conforming to the provisions relative to a public hearing, etc., to enact, amend and repeal ordinances not inconsistent with existing law, for many purposes, including " safety and health of its inhabitants," and " the protection of their property." Such power may be exercised whether the authority is specifically granted by the Village Law or other law, or necessarily implied therefrom. (Village Law, § 90.) The board of trustees of a village may enforce obedience to its ordinances by injunction. (Village Law, § 93.)

The serious and decisive question which must determine the right of the plaintiff to the relief sought in this action depends upon whether or not the Legislature, by the provisions of section 948 of the Conservation Law, has vested in the Superintendent of Public Works, in pursuance of the policy of the State, exclusive jurisdiction over structures impounding waters. In substance section 948 provides: (1) No structure for impounding water shall be erected or reconstructed without notice to the Superintendent of Public Works; (2) nor shall any such structure be erected, reconstructed or maintained without complying with such conditions as the

Superintendent of Public Works may by order prescribe for safeguarding life or property against danger therefrom; (3) the Superintendent of Public Works shall have power, whenever in his judgment public safety shall so require, to make an order directing any person, corporation, officer or board maintaining or using such structure to remove, repair or reconstruct the same in such manner as shall be specified in the order; (4) it is the duty of every such person, corporation, officer or board to obey, observe and comply with such order and with the conditions prescribed by the Superintendent of Public Works for safeguarding life or property against danger therefrom; (5) every person who fails, omits or neglects to comply with such order is subject to a penalty not exceeding $500 for each and every offense, and every violation of any such order is a separate and distinct offense, and in case of a continuing violation, every day's continuance shall be deemed a separate and dictinct offense.

Section 948 of the Conservation Law applies to any dam where the area draining into the pond formed thereby exceeds one square mile, to any dam more than ten feet in height above the bed of the natural stream at any point, and wherever the dam impounds water in excess of 1,000,000 gallons. The dam in question is twenty-eight feet in height on the outer face and impounds in excess of 75,000,000 gallons of water.

The provisions of section 948 of the Conservation Law clearly indicate the adoption of a State policy vesting in the Superintendent of Public Works full authority and control over structures impounding waters within the limitations specified. The purpose is clear, the power is specifically vested, and the provisions of the statute are explicit. Villages are municipal corporations, and in respect to the adoption of ordinances, like towns, have only such powers as are conferred by statute. (*Holroyd* v. *Town of Indian Lake*, 180 N. Y. 318; Village Law, art. 1-A, § 1-a, subds. 5, 6.)

The authority of a municipality to abrogate the provisions of a State statute, or to adopt local laws or ordinances in conflict therewith, is never to be implied or inferred. The policy of the State as enunciated by the Legislature is not to be ignored by a municipality unless it is specifically empowered to do so by plain and unequivocal provisions. (*People ex rel. Kieley* v. *Lent*, 166 App. Div. 550; affd., 215 N. Y. 626; *Mills* v. *Sweeney*, 219 id. 213; *Schieffelin* v. *Dolan*, 204 App. Div. 351; *Jewish Consumptives' Relief Soc.* v. *Town of Woodbury*, 230 id. 228; affd., 256 N. Y. 619; 43 C. J. 215–220, §§ 219, 220.) Before legislative authority to enact an ordinance can be said to be specific, a grant must define its details and mode of enforcement. (*People ex rel. Knoblauch* v.

*Warden*, 216 N. Y. 154.) The power to enact ordinances is general when the manner of exercising it is not specific. (*Village of Carthage* v. *Frederick*, 122 N. Y. 268.)

The ordinance in question simply provides that no dam, bulkhead or similar structure shall be built, constructed, maintained or operated so as to cause a dangerous or unsafe condition. By its provisions, a violation of the ordinance subjects the violator to a penalty of $100. There is no provision of statute vesting in the board of trustees of a village or any of the officers or employees of the municipality, power to determine whether a structure impounding waters is in a dangerous or unsafe condition. A violation of such an ordinance can only be established, apparently by an action, the taking of proof, and the rendition of a judgment.

The Legislature, in the adoption of its policy for the State, has vested full power and authority in the Superintendent of Public Works. It imposes upon such Superintendent a responsibility, the performance of a duty, and vests in him full authority in the premises. It requires all parties constructing, maintaining or operating a structure impounding water to " obey, observe and comply " with his order and the conditions prescribed by him for the safeguarding and protection of life and property against danger from such structure. It subjects a party failing to comply with the order of the Superintendent of Public Works to a penalty not exceeding $500 for each day's violation of the order. The ordinance in question prescribes a much lesser penalty for maintaining such a structure in a dangerous and unsafe condition. It is clearly apparent that the board of trustees by the ordinance have attempted to supplement, while in fact they have usurped, the functions of the State. The board of trustees in the ordinance have adopted a conflicting and inconsistent penalty with that prescribed by the Legislature in section 948 of the Conservation Law. It is our opinion that the ordinance is ineffective and void.

It is not the function of the court to advise or direct public officials in the performance of their duty, except when directly involved in a pending proceeding. It seems not inappropriate, however, to state that the structure impounding waters of Portertown creek, or the Bushkill stream, and creating the body of water known as Lake Switzerland, is in such a condition as not only to fully warrant, but require the investigation and examination of such condition by the Superintendent of Public Works in conformity to the duties and responsibilities imposed upon him by section 948 of the Conservation Law, and to make such order as such investigation and examination disclose should be made for safeguarding the lives and protecting the property of the inhabitants of the village of Fleischmanns.

Our conclusions render unnecessary a determination of the other points raised by the defendant Kingston Trust Company.

The plaintiff being obligated to establish its cause of action to entitle it to judgment against the defaulting defendants, in view of our conclusions, cannot recover judgment in this case.

The complaint is dismissed upon the merits, as to all of the defendants, with one bill of costs to the defendant Kingston Trust Company, to be taxed by the clerk of the county of Delaware, without costs as to all other defendants.

Findings and judgment accordingly.