MARY H. GRAVES et al., Appellants, *v.* JOHN DETERLING et al., Respondents.

120 447
146 33

While conditions subsequent can be imposed in a conveyance without the use of technical words, as they are not favored in law, they must be clearly expressed, and, if it is doubtful whether a clause is a covenant or a condition, the court will so construe it, if possible, as to avoid a forfeiture.

In an action to determine the title to certain premises, and for other relief, it appeared that in 1847, one L., being the owner of a tract of land in the city of Brooklyn, entered into a contract with G., plaintiffs' father, to sell the same to him, and convey it to such parties, at such times and in such quantities as G. should direct. G. entered into possession, caused a survey and map to be made, representing the property as laid out into city lots and blocks, except the premises in question, which were laid out on the map as a park. Pursuant to said agreement L., under the direction of G., conveyed to divers persons, by express reference to such map, all of said tract, except the park, subject to the payment forever thereafter of $3 annually upon each section so conveyed; "such payment to be made to" G., who, by the several conveyances, was "constituted the trustee of the parties thereto respectively, to receive the same for the purpose of regulating, fencing and improving" said park. L. and wife thereafter, as parties of the first part, executed and delivered to R. and others, as parties of the third part, a conveyance of said park, in which G. united as party of the second part, which deed, after reciting the above facts, stated that L. was desirous of carrying into effect his agreement by conveying the remainder of the land known as the park, and that G., "with the advice and consent of the owners and proprietors of the said sections, * * * charged with the payment of said yearly sum of money," had "directed and appointed the parties of the third part to take a conveyance of" the park. A grant followed in the ordinary form. The *habendum* clause ran to the parties of the third part, "the survivor of them and the heirs and assigns of such survivor, to their own proper use, and benefit and behoof forever, as joint tenants, and not as tenants in common, subject, nevertheless, to the rights and interests therein of the several owners of lots." Then followed covenants by L. of seizin, etc. The final clause in the deed was as follows: "And it is covenanted and agreed that the said parties of the third part, the survivor of them, his heirs or assigns, shall not, at any time or times thereafter, use, follow, or permit or suffer any person to use, follow, in or upon the said premises any noxious or offensive business, * * * put or suffer to remain in or upon the said premises * * * any matter or thing whatsoever which may be noxious or offensive, or be to the annoyance, prejudice or disturbance of any person

or persons owning land or residing contiguous thereto; nor use the said premises for any other purpose than as an ornamental park." The deed contained no provision for a forfeiture or re-entry. R. and his associates conveyed the land in controversy to a park association, incorporated by statute (Chap. 23, Laws of 1857), which corporation mortgaged said premises to raise money to improve the park. This mortgage was foreclosed and the land covered by it sold and conveyed; title thereto has since passed by various conveyances to purchasers in good faith and for full consideration, one of whom was compelled to accept the title as good by order of this court. (74 N. Y. 622.) It appeared that the lot owners did not pay $3 annually upon each section, as provided in the original deeds from L. After the date of the tripartite deed G. had no interest in any lot or section of the land outside the park, and, so far as appeared, claimed no interest in the park itself. *Held*, that the final clause in the deed created a covenant running with the land, but did not attach a condition to the grant or make the existence of the estate granted dependent upon the observance thereof; and, as the covenant was not made for plaintiffs' benefit or the benefit of their ancestor, and as they had no title, they could not maintain this action.

Technical terms in a conveyance are presumed to have been used with their accustomed meaning, unless the circumstances and context indicate a different intent.

(Argued April 24, 1890; decided June 3, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 23, 1886, which affirmed a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

This action was brought to procure a decree that the title to certain premises in the city of Brooklyn is in the plaintiffs; to require the defendants to surrender the possession thereof, and for other relief.

In 1847, one Rem Lefferts owned about seventy-two acres of land in Brooklyn, known as the Clover Hill farm, which included the premises in question. During that year he entered into an agreement with Rosewell Graves, the father of the plaintiffs, to sell him said tract for $350 an acre and to convey the same to such parties, at such times and in such quantities as he should direct. Mr. Graves entered into

possession and caused a survey and map to be made representing the property as laid out into seventeen blocks, each consisting of several lots, except one, centrally located and the subject of this action, which was laid down on the map as "Lefferts Park." Pursuant to said agreement and prior to November 6, 1852, Mr. Lefferts, under the direction of said Graves, conveyed, by express reference to such map, all of said tract, except the park, by sundry deeds to divers persons, subject to the payment on the first day of March in each year, forever thereafter, of the sum of $3 upon each section so conveyed, "such payment to be made to" Mr. Graves, who by the several conveyances, was "constituted the trustee of the parties thereto, respectively, to receive the same for the purpose of regulating, fencing and improving" said park "and of keeping the fences around the same in repair."

On the day last named said Lefferts and wife, as parties of the first part, executed and delivered to John C. Riker and three others, as parties of the third part, a conveyance of said park, and Mr. Graves united therein as party of the second part. This tripartite deed, after reciting in substance the foregoing facts, stated that said Lefferts was desirous of carrying into effect his said agreement by conveying the remainder of the land, known as "Lefferts Park" and that said Graves "with the advice and consent of the owners and proprietors of the said sections   *   *   *   charged with the payment of said yearly sum of money" had "directed and appointed the parties of the third part to take a conveyance of" the park, "which direction and appointment," as the instrument further recited, "the said party hereto of the second part doth hereby testify to by his signing and sealing this indenture." No reason, other than that thus stated, appears for making Mr. Graves a party to the deed, as he did not join in any part thereof except the recital. A grant followed in the ordinary form from the parties of the first to the parties of the third part, of the land known as "Lefferts Park" stating that it was made "in consideration of the premises and of the sum of one dollar." The *habendum* clause ran to the

parties of the third part, "the survivor of them and the heirs and assigns of such survivor, to their own proper use and benefit and behoof forever, as joint tenants and not as tenants in common, subject, nevertheless, to the rights and interests therein of the several" owners of lots. Following this clause were covenants by Lefferts of seizin, right to convey, against incumbrances, warranty, for quiet enjoyment and further assurance. Immediately after these covenants was the following paragraph, which concluded the instrument: "And it is covenanted and agreed that the said parties of the the third part, the survivor of them, his heirs or assigns, shall not at any time or times hereafter, use, follow or permit, or suffer any person to use or follow in or upon the said premises any noxious or offensive business of whatsoever name or description and that they or any of them, shall not at any time or times, place, put or suffer to remain in or upon the said premises, or any part or parcel thereof, or of the appurtenances, any matter or thing whatsoever which may be noxious or offensive or be to the annoyance, prejudice or disturbance of any person or persons owning land or residing contiguous thereto, nor use the said premises for any other purpose than as an ornamental park."

On the 10th of January, 1854, said John C. Riker and his associates conveyed the land in controversy to the "Lefferts Park Association," a corporation created by chapter 545 of the Laws of 1853. March 2, 1857, under the authority of chapter 23 of the Laws of 1857, said corporation mortgaged said premises for $20,000, and thereby raised money to improve the park. This mortgage was afterward foreclosed, and on July 3, 1861, the land covered thereby was sold and conveyed by the sheriff of Kings county, and since then, as the trial court found, it has passed by various conveyances to purchasers in good faith and for full value, who, after taking the advice of counsel, believed that they were obtaining a good title. One of them was compelled to accept the title as good by the order of this court. (*Adair* v. *Adair*, 74 N. Y. 622.)

It appeared upon the trial that the lot owners did not pay the sum of $3 annually upon each section, as provided in the original deeds from Lefferts. Neither the plaintiffs nor their father ever had the legal title to any part of the Clover Hill farm, and after the date of the tripartite deed, their father had no interest in any lot or section of the tract outside of the park, and, so far as appears, claimed no interest in the park itself.

The trial court dismissed the complaint upon the ground, among others, that the plaintiffs had no right or interest upon which an action could be founded.

*J. Hampden Dougherty* for appellants. The conveyance of November 6, 1852, was not intended as a gift from Graves to Riker; inasmuch as no consideration was paid by the grantees the deed could not have intended to, and it did not, vest in them any beneficial interest in the land itself. Its sole purpose was to create a trust in the grantees for the benefit of the section owners to whom had been given a perpetual easement in the park conditioned upon their paying their annual assessments toward its maintainance, and also a trust for Graves' benefit. (Perry on Trusts [2d ed.], 167, § 151; 1 R. S. 727, 728, §§ 47, 49; *Woerz* v. *Rademacher*, 30 N. Y. S. R. 271, 273; *Niver* v. *Crane*, 98 N. Y. 40.) Regarding the conveyance in question as a trust, inasmuch as it was conclusively shown and is admitted that the purpose for which the trust was created has ceased, the title to the land of the park has reverted to the creator of the trust — in other words to Graves the equitable owner of the property at the time the conveyance was made and to his heirs. (3 R. S. [7th ed.] 2181, 2182, §§ 55, 58, 59, 67; *Smith* v. *Bowen*, 35 N. Y. 83; Laws of 1840, chap. 318, § 4.) The present case is analogous to many cases in which, after a dedication of land for easement purposes accompanied with a vesting of the title to the land, in trust for the easement owners, the courts have held that upon the discontinuance or abandonment of the easement, the title, which had been actually conveyed, reverted to the

original grantor who created the easement. (*M. Co.* v. *Maywood*, 118 Ill. 61; *C. R. I. & P. R. R. Co.* v. *City of Joliet*, 79 id. 25; Gerard on Streets and Wharves, 153, 154, 155; *Wyman* v. *Mayor, etc.*, 11 Wend. 487; *W. Bank* v. *Nichols*, 64 N. Y. 65; *Trustees, etc.*, v. *Council of Hoboken*, 33 id. 13, 18, 19; *Talmadge* v. *E. R. Bank*, 26 id. 108; *Pomeroy* v. *Mills*, 3 Vt. 297; *Hunter* v. *Trustees*, 6 Hill, 411; *Cincinnati* v. *White*, 6 Pet. 431; *New Orleans* v. *U. S.*, 10 id. 63; *Hunter* v. *Middleton*, 13 Ill. 50; *Gebhard* v. *Reeves*, 75 id. 301; *Helen* v. *Webster*, 85 id. 116; *Z. Co.* v. *City of La Salle*, 117 id. 411; *Clinton* v. *R. R. Co.*, 24 Ia. 455; *Gadberry* v. *Sheppard*, 27 Miss. 203; *Lee* v. *M. Station*, 118 Ill. 304; *R. R. Co.* v. *Schurneir*, 7 Wall. 278.) The conveyance of November 6, 1852, clothed Riker with only a base or determinable fee — the limitation being so long as the property should be maintained as a park for the benefit of the section owners. (*French* v. *Carhart*, 1 N. Y. 96; *Bennett* v. *Culver*, 97 id. 250, 256; *Hussner* v. *R. R. Co.*, 96 id. 23; 1 R. S, 748, § 2; *Hooker* v. *U. & M. T. Co.*, 12 Wend. 371, 372; *People* v. *White*, 11 Barb. 26; 4 Kent's Comm. 9; *Mahon* v. *N. Y. C. R. R. Co.*, 24 N. Y. 658, 660; *Warren* v. *Mayor, etc.*, 32 Ia. 351; *State* v. *Brown*, 27 N. J. L. 13; *Strong* v. *City of Brooklyn*, 68 N. Y. 1; *Heard* v. *City of Brooklyn*, 60 id. 242, 245; *Jackson* v. *Hathaway*, 15 Johns. 447; *In re John & Cherry Sts.*, 19 Wend. 659; *Story* v. *N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 122, 157, 158, 165; *R. R. Co.* v. *Schurmeir*, 7 Wall. [U. S.] 272; 2 Bl. Comm. 155, 156; 2 Minor Inst. 263; 2 Washb. on Real Prop. 23, 25, 457, 459; Smith on Ex. Int. §§ 34, 42; 2 Kent's Comm. 129; *Henderson* v. *Hunter*, 59 Penn. St. 335; *Ashley* v. *Warner*, 11 Gray, 43; *Henderson* v. *Hunter*, 59 Penn. St. 335; *Kirk* v. *King*, 3 Barr. 436; *Schutz* v. *Fitzwater*, 5 id. 126.) If a reversion results under the deed to the Lefferts Park Association, it clearly results under the earlier conveyance, for the further reason that the grantors in the deed to the association and all claiming under them are estopped from claiming that the purpose or intention of or the limitations in the first conveyance are

not the same as in the second. (*Jackson* v. *Parkhurst,* 9 Wend. 209; *Carver* v. *Jackson,* 4 Pet. 1; *Crane* v. *Lessee,* 6 id. 598; *Torrey* v. *Bank of Orleans,* 9 Paige, 649; *Russell* v. *Wickham,* 36 Barb. 386; *C. C. Bank* v. *Risley,* 4 Den. 480; 19 N. Y. 369, 377, 378; *French* v. *Carhart,* 1 id. 96; *Livingston* v. *Ten Brock,* 16 Johns. 23, 24; *Mott* v. *Mott,* 68 N. Y. 253; *Hussner* v. *R. R. Co.,* 96 id. 23; *Baird* v. *Fortune,* 7 Jur. [N. S.] 926.) Despite the indisposition of courts of equity to introduce conditions subsequent by implication into a conveyance, where an actual or valuable consideration has been paid to the grantor, the contrary rule prevails where no consideration was paid for the conveyance and the agreement of the grantees is the whole consideration for the grant. (*I. P. & C. R. Co.* v. *Hood,* 66 Ind. 580; *Cross* v. *Carson,* 8 Blackf. 138; *Leach* v. *Leach,* 4 Ind. 628; 10 id. 271; *Scott* v. *Stipe,* 12 id. 74; *Clark* v. *Holton,* 57 id. 564; *Wilson* v. *Wilson,* 86 id. 472; *Hershman* v. *Hershman,* 63 id. 451; *Lindsay* v. *Lindsay,* 45 id. 552; *Andrews* v. *Spurlin,* 35 id. 262; *Stilwell* v. *Knapper,* 69 id. 558, 570; *Jenkins* v. *Jenkins,* 3 Mon. 327; *Scott* v. *Scott,* 3 B. Mon. 2; *Devereaux* v. *Cooper,* 11 Vt. 103; *Heffner* v. *Yount,* 8 Blackf. 455; *Horner* v. *C. M. & S. P. R. Co.,* 38 Wis. 165; 4 Kent's Comm. 132; 44 Am. Dec. 742; *Blake* v. *Blake,* 56 Wis. 392; *De Long* v. *De Long,* Id. 514; *Richter* v. *Richter,* 111 Ind. 456; 2 Washb. on Real Prop. 7; *Risley* v. *McNiece,* 71 Ind. 431; *Post* v. *Weil,* 115 N. Y. 361; *Bennett* v. *Culver,* 97 id. 250; 1 R. S. 699, § 2; *Anonymous,* 2 Abb. [N. C.] 56.) In whatever aspect the conveyance of November 6, 1852, is to be regarded, whether as a trust, a dedication or grant of the fee for the benefit of the easement owners, a grant of the fee upon limitation or upon a condition subsequent, a reversion exists in favor of the equitable grantor, Graves or his heirs — with this difference, that in the case of a condition subsequent re-entry must follow the breach of the condition, whereas, if the deed be upon limitation or be a trust or dedication, the termination of the purpose of the grant or the extinguishment of the easement *ipso facto* brings the estate of the grantees to an end

without re-entry. (*Terrett* v. *Cowenhoven*, 11 Hun, 320; *Hubbard* v. *Gilbert*, 25 id. 596; 2 Story's Eq. Juris. 878; *Champion* v. *Brown*, 6 Johns. Ch. 398.) The existence of a reversion has been repeatedly acknowledged by the defendants and their predecessors and repeated attempts have been made to destroy it, but unsuccessfully, for the reason that neither Graves nor his heirs were made parties to any suit or proceeding to cut off the reversion. (*Case* v. *Reeves*, 1 Johns. 79; *Jackson* v. *Vedder*, Id.; 2 Taylor on Ev. 140, § 1682.) A reversion in the plaintiffs' favor having been clearly established, it was not cut off by the mortgage of the park or the subsequent foreclosure proceedings. The act of February 13, 1857, authorizing the issue of bonds of the association secured by a mortgage upon the park and its improvements to the extent of $20,000 was unconstitutional and void. The mortgage and foreclosure proceedings were likewise void. (*Jacksonville* v. *J. R. Co.*, 67 Ill. 540; *Cummings* v. *St. Louis*, 90 Mo. 259.) The defendants have failed to make out a title by adverse possession. (Abb. Tr. Ev. 715; 2 Greenl. on Ev. § 430; *Soule* v. *Barlow*, 49 Vt. 329; *Beatty* v. *Mason*, 30 Md. 409; *Stevens* v. *Hauser*, 39 N. Y. 302; *O'Brien* v. *Holdman*, 23 Penn. St. 284; *Cleveland* v. *Crawford*, 7 Hun, 616, 622; Code of Pro. §§ 82, 83; Code Civ. Pro. §§ 369, 370, 375; *Miller* v. *L. I. R. R. Co.*, 71 N. Y. 386; *Thompson* v. *Burnham*, 79 id. 99.) The defendants having taken the lands with knowledge of the character of the conveyance of November 6, 1852, are not entitled to be reimbursed for any permanent improvements made by them upon the property. (*Gilbert* v. *Peteler*, 38 N. Y. 170; *Miner* v. *Beekman*, 50 id. 338.)

*David Barrett* for respondents Vrooman. The covenant and agreement of Riker and his co-grantees that they should not use the premises for any other purpose than an ornamental park cannot be construed as a condition. (4 Kent's Comm. 127, 130; *Barrow* v. *Richard*, 8 Paige, 351; *Craig* v. *Wells*, 11 N. Y. 315; *Hill* v. *Priestly*, 52 id. 635; *Woodworth* v. *Payne*, 74 id. 196; *Abbott* v. *Curran*, 98 id. 665.)

The plaintiffs have established no cause of action against respondents. (*Adair* v. *Adair*, 74 N. Y. 622.)

VANN, J. In 1847 the equitable title to the Clover Hill farm was in Rosewell Graves by virtue of his contract for the purchase thereof with Rem Lefferts, who thereupon held the title in trust for the purchaser. (*Stoddard* v. *Whiting*, 47 N. Y. 627, 632.) On the 6th of November, 1852, by various conveyances made by Lefferts at the request of Graves, both the legal and equitable title to the entire tract, except the park, had passed to the several grantees, each of whom had acquired an easement in the park for the benefit of his lot. When the park itself was conveyed, neither Lefferts nor Graves had any beneficial interest therein, except a right in the nature of a reversion in case all of the easements should be extinguished, because neither of them owned any of the adjacent land for the benefit of which the park was created. All that they had to convey, therefore, was the naked title to support the easements and the possibility that by a surrender or abandonment of the easements, which had deprived the park of all market value, the right to beneficial ownership would be restored. These facts have a material bearing upon the construction to be placed upon the tripartite deed, which is claimed by the plaintiff to contain a condition subsequent, involving, upon the breach thereof, a common-law forfeiture. Whether the provision in question was a condition or a covenant depends upon the intention of the parties, and the slight value of the interest conveyed makes it improbable that a forfeiture was in contemplation. (4 Kent's Comm. 129, 132; Bishop on Cont. § 418.)

While conditions subsequent can be imposed without the use of technical words, as they are not favored by law, they must be clearly expressed, and, if it is doubtful whether a clause is a covenant or a condition, the courts will so construe it, if possible, as to avoid a forfeiture. (*Craig* v. *Wells*, 11 N. Y. 315; *Parmelee* v. *O. & S. R. R. Co.*, 6 id. 74, 79; *Woodruff* v. *Woodruff*, 44 N. J. Eq. 349.)

Even where the *habendum* clause of a deed contained the following stipulation, to-wit: "Provided always, and these presents are upon this express condition, that the aforesaid premises shall not, nor shall any part thereof, or any building or buildings thereon erected or to be erected, be at any time hereafter used or occupied as a tavern or public house of any kind," it was held that as the intention might be sought for in the other words of the instrument and by reference to the surrounding circumstances, said provision was simply a covenant running with the land for the benefit of the adjoining estate belonging to the grantor. (*Post* v. *Weil*, 115 N. Y. 361.)

The deed under consideration in *Avery* v. *N. Y. C. & H. R. R. R. Co.* (106 N. Y. 142), provided that it was "upon the express condition that the said railroad company * * * shall, at all times, maintain an opening into the premises hereby conveyed opposite to the Exchange Hotel, so called, for the convenient access of passengers and their baggage." The court held that the language used was for the benefit of the hotel property and was not meant to create a condition subsequent, but was intended to be an agreement or covenant running with the land, providing for a right of way so as to enhance the value of the hotel property.

See also, as illustrating the subject, *Clark* v. *Martin* (49 Penn. St. 289, 297); *Stanley* v. *Colt* (5 Wall. 119); *Countryman* v. *Deck* (13 Abb. [N. C.] 110); *Ayling* v. *Kramer* (133 Mass. 12); *Barrie* v. *Smith* (47 Mich. 130).

The provision in question is not a part of the *habendum* clause, where conditions are usually found in deeds, but it follows the covenants for title. While this is by no means controlling, it has a significance not to be overlooked, as the instrument was evidently drawn by a skilled conveyancer, who was well acquainted with both the forms and technical terms in common use by experienced draftsmen of deeds. The absence of technical language appropriate, although not essential, to create a condition, is also significant, because, for time out of mind, conditions have usually been preceded by

such words as *proviso, ita quod* and *sub conditione*, or their modern equivalents.

The parties introduce the provision by saying "it is covenanted and agreed," and thus expressly call it a covenant. This alone, however, would not make it a covenant, as that which is termed a covenant may be a condition and that which is termed a condition may be a covenant (*Post* v. *Weil, supra,* 370) ; but it has an important bearing upon the intention of the parties, because technical terms in a conveyance are presumed to have been used with their accustomed meaning, unless the circumstances and context indicate a different intent.

There is no provision for a forfeiture or re-entry, nor anything from which it can fairly be inferred that the continuance of the estate is to depend upon the supposed condition, yet this is regarded as essential in order to create a condition. (*Lyon* v. *Hersey,* 103 N. Y. 264, 270 ; *Craig* v. *Wells,* 11 id. 315, 320.)

The grant is to the parties of the third part, their survivor, his heirs and assigns, " to their own proper use and benefit and behoof, forever," subject to the rights of the lot owners, but not subject to any right reserved, or condition imposed, by the grantors. After various covenants binding upon the grantors, the provision under consideration follows, binding only upon the grantees. Independent of its location, form and the want of apt words, we think that its nature, object and function show that the parties intended it for a covenant, and not for a condition. It is promissory, not conditional, in its character and meaning. The language used is appropriate to create a covenant running with the land, but not to attach a condition to the grant; or to make the existence of the estate granted dependent upon the observance thereof. The words are used by the grantees not by the grantors. They do not grant upon condition, but accept with a promise, made not for the benefit of the grantors but of those to whom easements had previously been conveyed by the grantors. The restriction, as the recitals of the deed show, is for the benefit of the

adjoining property, rather than for the personal benefit of the grantors and their heirs, by way of forfeiture or reversion. In fine, every ear-mark and every presumption supports the theory of a covenant, and is opposed to the theory of a condition.

But the plaintiffs claim that even if the provision is a covenant they are still entitled to some relief, because, as it is insisted, the easements have been abandoned and the covenant violated. The weakness of this position is that the covenant was not made for their benefit, or for the benefit of their ancestor. If the owner of a dominant lot, who had not abandoned his right to the park, were here asking the preventive remedies of the court, a different question would be presented. The plaintiffs, however, are not in a situation to ask that the park should be maintained or its desecration prevented. The whole title to the park and the contiguous lots passed from their father in his lifetime, and they inherited no right to either. As they have title neither to the park nor to any land for the benefit of which the park was created, they have no foundation upon which to base an action.

The judgment should be affirmed, with costs.

All concur, except Brown, J., not sitting.

Judgment affirmed.