OPINION OF THE COURT
Louis D. Laurino, J.
Kurt Storch, the executor appointed under the decedent’s will, asks the court to construe the instrument and, more particularly, the first paragraph to determine what is to be charged to the legacy he receives under it. The paragraph in question reads: "First, after my lawful debts are paid, I give and bequeath to hurt storch the sum of $10,000.00, out of which sum I direct that he pay my funeral expenses and other lawfull [sic] debts and in addition pay for the perpetual care of my grave and that of my late husband morris sperling, both *447 graves being located in Mt. Hebron Cemetary, Machpelah plot, in Queens County, New York, anything herein contained to the contrary notwithstanding. ”
There follow four paragraphs in which general and specific bequests are made and a sixth in which the residue is left to a nephew.
The instrument was drafted by an attorney on a "Blumberg” will form of the type usually used by laymen to draft their own wills, leaving legacies of confusion for their heirs and fees for the attorneys employed by them. The attorney-draftsman does not represent the petitioner in this proceeding.
In paragraph first the words "First, after my lawful debts are paid, I give” are printed on the form and the rest of the paragraph typewritten. It is obvious then that the intent of the last phrase of the paragraph "anything herein contained to the contrary notwithstanding” is to nullify the printed phrase "after all my lawful debts are paid”.
The question posed by the executor-legatee is what is the meaning of the "other lawfull [sic] debts” referred to in the body of the paragraph. Does it include administration expenses such as filing fees and attorneys’ fees, etc., or is it limited to those debts that were acquired by the decedent during her lifetime?
Debts of the decedent have long been distinguished from funeral expenses and administration expenses. Blackstone in his Commentaries on the Law, which were first published between 1765 and 1769, writing of the duties of executors and administrators, states:
"In the payment of debts, he must observe the rules of priority; otherwise, on deficiency of assets, if he pay those of a lower degree first, he must answer those of a higher grade out of his own estate.
"(1) He must pay all funeral expenses, and the costs of probate of the will, and the like.
"(2) Debts due the king on record or specialty.
"(3) Debts preferred by special statutes.
"(4) Debts of record, as judgements, statutes and recognizances.” (See Blackstone’s Commentaries, Book II, ch 32, p 515 [Gavit ed, 1941].)
If Blackstone is correct in the historical background he gives for the law as he found it, it is easy to see why "the costs of probate of the will and the like” were distinguished *448 from debts of the decedent and given a priority. For he reports that the ancient custom had been to turn over the property of an intestate to the crown, who turned them over to the "ordinary”, an ecclesiastical official who would, in turn, after deducting two thirds as the widow’s and children’s shares, distribute the remainder to the poor or employ it for other "pious uses” for the good of the soul of the deceased, often without paying the debts the decedent owed.
The probate of a will removed this power of distributing the goods of the deceased for pious purposes. It would appear then that the probating of the will of the decedent would not only serve the purposes of the decedent and the objects of his bounty, but society at large, by facilitating the collection of debts.
According to Blackstone, in the reign of Edward III a statute was passed requiring the ordinary to deputize the next lawful friends of the decedent to administer his goods in cases of intestacy. They were put in the same class as executors regarding lawsuits and accountings. The term "next lawful friend” was determined to be the next of kin under no legal disability. Being on the same footing with executors, it would be logical to presume administrators also would have the right and the duty to pay "administration expenses” before the debts of the decedent. The necessity of giving a decent funeral to the dead and the priority of this obligation over others was, of course, recognized long before the "common law of England” existed (see Eccl 38:16; Sophocles, Antigone).
The distinction between funeral expenses, administration expenses and the debts of the decedent has been fortified through the years. In 1874 Justice Folger in Patterson v Patterson (59 NY 574, 585), stated: "Though our statute of payment of debts and legacies * * * gives the order in which the executor shall make payment of debts against the estate, and though there is no provision there for a priority of payment of funeral expenses, it is not to be held therefrom that the common-law rule is abrogated. Those expenses are not to be treated as a debt against the estate, but as a charge upon the estate, the same as the necessary expenses of administration * * * The expenses of probate of will precede the formal authority to the executor, but are allowed to him on an accounting. So should the funeral expenses be.”
The distinction between funeral expenses, administration expenses and debts are still carried in the SCPA and EPTL. *449 Thus SCPA 1811 "Payment of debts and funeral expenses”, provides: "1. The reasonable funeral expenses of the decedent subject to the payment of expenses of administration shall be preferred to all debts and claims against his estate and shall be paid out of the first moneys received by his fiduciary.” While EPTL 5-3.1 "Exemption for benefit of family”, provides in paragraph (4) of subdivision (a): "Money or other personal property not exceeding in value one thousand dollars, except that where assets are insufficient to pay the reasonable funeral expenses of the decedent, the personal representative must apply such money or other personal property to defray any deficiency in such expenses.”
EPTL 5-3.1 is derived from section 200 of the Surrogate’s Court Act. It has long been held that under the statute the exemption is to be charged with reasonable funeral expenses only and not with administration expenses which are distinct. (Matter of Turner, 178 Misc 699; Matter of Schoenfelder, 161 Misc 654.)
When a will is drafted by an attorney, words used in it are to be given the technical meaning they have acquired unless a different intent can be clearly gathered from a reading of the entire document (Matter of Parant, 39 Misc 2d 285; Graves v Deterling, 120 NY 447).
From a reading of the decedent’s will as a whole, the court cannot find any intent on the part of the testator which would extend the meaning of the word "debts” used in the phrase "and other lawfull [sic] debts” to include administration expenses from which it has long been distinguished.
The legacy to Kurt Storch, therefore, is to be charged with the decedent’s funeral expenses, the costs of perpetual care for the graves of the decedent and her husband and the debts acquired through her actions and promises during her lifetime. The necessary costs of administration shall be borne by the residuary estate. Federal and State estate taxes on property passing under the will shall be apportioned in accordance with EPTL 2-1.8.