78 N.Y.2d 383 (1991)
Suffolk Business Center, Inc., Appellant,
v.
Applied Digital Data Systems, Inc., Respondent.
Court of Appeals of the State of New York.
Argued September 12, 1991.
Decided October 17, 1991.
Eugene L. Wishod, Conley E. Brian, Jr., and Scott M. Karson for appellant.
Thomas S. D'Antonio, Karen B. Newman and Robert W. Napoles for respondent.
Judges ALEXANDER, TITONE and HANCOCK, JR., concur with Judge BELLACOSA; Judge KAYE dissents and votes to affirm in a separate opinion in which Chief Judge WACHTLER and Judge SIMONS concur.
*385 BELLACOSA, J.
The issue is whether the parties intended that a construction and repurchase clause should constitute a covenant running with the land, enforceable by specific performance, or a future interest on a condition subsequent, enforceable only under Real Property Actions and Proceedings Law (RPAPL) § 1953. We hold that the parties' intention, reflected in a merged obligation found in the deed of sale, produced a covenant and we therefore modify by denying the defendant's cross motion for summary judgment and remitting to Supreme Court for further proceedings.
*386 Plaintiff, Suffolk Business Center (SBC), was formed to acquire and develop, as an industrial park, a 302-acre tract of land in Smithtown, Suffolk County. In 1978, SBC contracted to sell an approximately 8.17-acre parcel within the proposed industrial park to defendant, Applied Digital Data Systems, Inc. (Applied) for $408,695. Applied owned an adjoining seven-acre parcel, improved with a building and used to its maximum capacity under the local zoning code. Applied planned to use the combined parcels to expand its facilities under a project denominated the "Phase I Improvements". It consisted of a 12,600-square-foot warehouse addition to Applied's existing building, to be located partially on both parcels, and a 23,250-square-foot office building.
The contract of sale contained a requirement by which Applied agreed to commence construction on the Phase I improvements within one year after it acquired title and then to continue with due diligence until Phase I was completed. Under the agreement, if Applied failed or fell short in that regard, SBC on written notice was entitled but not obligated to repurchase the subject parcel and Applied was required to sell it back at the original purchase price. One month after entering into the contract, the parties closed on the title, and the deed, reciting the construction/repurchase provision, was recorded. Applied began and substantially completed construction of the warehouse addition. It concedes its failure to commence construction of the office building improvement of Phase I, due apparently to unfavorable economic conditions. Based on that failure, SBC exerted its option to repurchase the subject parcel, as partially improved by Applied. Applied rejected SBC's overture and this lawsuit ensued.
SBC sued for specific performance, among other related and alternative forms of relief. On cross motions for summary judgment, Supreme Court, Suffolk County, granted Applied's cross motion and dismissed the complaint, without prejudice to SBC commencing an action pursuant to RPAPL 1953. The Appellate Division affirmed, agreeing with Supreme Court that SBC had conveyed a fee to Applied, subject to a future interest on a condition subsequent, enforceable only under RPAPL 1953 (162 AD2d 677). This Court granted SBC's motion for leave to appeal and now modifies the order of the Appellate Division, which is final (see, McDermott v Manhattan Eye, Ear & Throat Hosp., 15 N.Y.2d 20, 23, n 2).
We hold that the words used in the critical documents and *387 the omission of any right of reentry effecting a forfeiture manifests the commercially sophisticated parties' intent to create a covenant running with the land enforceable in equity. Contrary to the holdings of the lower courts, the right at issue in this transaction is not one of reacquisition subject to a condition subsequent, which would relegate the parties solely to the statutory remedy of RPAPL 1953.
SBC's rights flow from the deed into which the contractual obligations merged, as the lower courts properly concluded (Schoonmaker v Hoyt, 148 N.Y. 425, 429-430; 3 Warren's Weed, New York Real Property, Merger, § 3.01; 1A Warren's Weed, op. cit., Contracts, § 20.02). The parties had expressly agreed that "the deed to be delivered by the Seller under this Agreement shall contain such provisions as are necessary to implement the [construction/repurchase] provisions * * * so that such provisions shall constitute covenants running with the land." (Emphasis added.) This particularized expression and characterization of their specific intent as to the provision at issue should control and is superior to the boilerplate survival-of-contract-rights-and-obligations clause, found in paragraph 22 of the contract.
This case turns essentially on the proper classification of the construction/repurchase provision: Is it a covenant enforceable in equity or a future estate on a condition subsequent enforceable only under RPAPL 1953? A covenant is a promise to do or refrain from doing certain things with respect to real property (1A Warren's Weed, op. cit., Conditions and Limitations, §§ 1.03, 2.01; 1A Warren's Weed, op. cit., Deeds, § 14.01; 4A Warren's Weed, op. cit., Restrictive Covenants, §§ 1.03, 1.05). A covenant for the construction of improvements on a parcel may be enforceable in an action at law for money damages for breach or where, as here, the covenant runs with the land, in an equitable action for specific performance (1A Warren's Weed, op. cit., Conditions and Limitations, §§ 1.03, 2.01), the precise remedy to be fashioned to suit the competing equitable circumstances between the parties.
On the other hand, a right of reacquisition retained by a grantor upon the simultaneous creation of an estate, and triggered by a condition subsequent, is classified as a future estate (EPTL 6-4.6). A future interest on a condition subsequent is one that by failure or nonperformance may operate to forfeit an estate that is otherwise conditionally vested (Munro v Syracuse, Lake Shore & N. R. R. Co., 200 N.Y. 224, 230; *388 Towle v Remsen, 70 N.Y. 303, 309, 311-312; 1A Warren's Weed, op. cit., Conditions and Limitations, §§ 1.03, 5.01; EPTL 6-1.1, 6-4.6).
Whether the construction/repurchase provision in this deed qualifies as a covenant or a condition subsequent is dependent upon the parties' intent. Intent is drawn from the governing instrument itself and from the particular language selected to reflect the goals and understandings of the parties.
While not alone dispositive, the provision in this deed uses the real property word of art, "covenants," with respect to the contemplated construction/repurchase option. That helps to pin down the parties' intent to create a covenant to allow repurchase, not a future interest on the happening of a condition subsequent which may effect a forfeiture (Graves v Deterling, 120 N.Y. 447). The ultimate inclusion of the key provision in the deed instrument is likewise not alone dispositive in view of the covenant language used and the absence of the critical term "condition". Again, particular words alone are not determinative and no particular words need be used (Munro v Syracuse, Lake Shore & N. R. R. Co., 200 NY, at 231, supra; Post v Weil, 115 N.Y. 361, 369-372, 374; Towle v Remsen, 70 N.Y. 303, supra; 1A Warren's Weed, op. cit., Conditions and Limitations, §§ 2.01, 2.03). However, terminology is highly significant and launches the analysis because legal terms of art in a conveyance are presumed to have been used with their accustomed meaning, especially where the context and circumstances reveal no contrary direction (Graves v Deterling, 120 NY, at 457, supra). None of the traditional future interest language was used anywhere in this deed (Trustees of Union Coll. v City of New York, 173 N.Y. 38; 1A Warren's Weed, op. cit., Conditions and Limitations, § 3.01). Also supportive of our interpretation is the lack of any language parallelling the statutory language for the creation of future estates (see, EPTL 6-3.2 [a] [1] [C]; 6-4.6).
Examined from another perspective, we observe that a future interest may be deemed present where a grantor reserves a right to reenter to effectuate a forfeiture upon a grantee's failure to perform a condition subsequent. While an express reentry reservation is not essential (Post v Weil, 115 NY, at 371, supra; 1A Warren's Weed, op. cit., Conditions and Limitations, § 5.02), it is well established that inclusion of such a right is one of the clearest and strongest manifestations supporting a finding of intent to create a future interest *389 on a condition subsequent (Munro v Syracuse, Lake Shore & N. R. R. Co., 200 NY, at 231, supra). Conversely, the weight of authority indicates that a covenant is intended and preferred where, as here, the deed is tellingly silent as to any reentry authorization (Cunningham v Parker, 146 N.Y. 29, 33; Graves v Deterling, 120 NY, at 457, supra; Post v Weil, 115 NY, at 371-372, supra; Stillwell v Morley, 26 AD2d 740; 2 Powell, Real Property ¶ 188, at 13-69; 1A Warren's Weed, op. cit., Conditions and Limitations, § 2.04; Restatement of Property § 45, illustration 13, at 144). This deed gives SBC only the discretionary option to repurchase the parcel on notice at the original purchase price as an agreed-upon remedy for Applied's breach of the construction/repurchase provision.
Our conclusion that the deed contains a covenant and not a future estate is fortified by the plain meaning and operation of the deed's repurchase provision; the provision does not effect a forfeiture, which is usually an essential component of a future interest on a condition subsequent (Trustees of Union Coll. v City of New York, 173 N.Y. 38, supra; Upington v Corrigan, 151 N.Y. 143, 154; Matter of Nelson, 154 AD2d 378). Although enforcement of the repurchase provision could lead to SBC's reacquiring the subject land with its improvements, SBC's payment to Applied of the original purchase price  as required by the deed repurchase provision  avoids forfeiture as that term of art is usually understood in such matters. The type of estate created should be determined with reference to the time the parties make their agreement and consummate their transaction. The subsequent improvement and appreciation of the land does not retroactively or by itself convert the critical provision into a future estate. These are matters requiring certainty and reliable predictability. Thus, they cannot be left to vary on a case-by-case basis. Indeed, one wonders what the effect and rule would be if the land here had not been improved and had depreciated in value. The case-by-case approach would deny effect to the parties' agreement and intent and concentrate on extrinsic subsequent events, some of which are not even in the control of the contracting, transacting parties.
The legislative history of Real Property Law § 347, predecessor to RPAPL 1953, also indicates that the purpose of the statute is to limit the enforceability of forfeiture provisions (1958 Report of NY Law Rev Commn, at 227-228, 233, reprinted in 1958 McKinney's Session Laws of NY, at 1709, 1713; see, 2A Powell, Real Property ¶ 271 [3], at 20-29 et seq.; *390 1A Warren's Weed, op. cit., Conditions and Limitations, § 1.05; Board of Educ. v Miles, 15 N.Y.2d 364, 367-368). Enforcement of this covenant does not effect a forfeiture. The Law Revision Commission Report, which proposed the statute as originally adopted, specifically distinguished future interests subject to conditions subsequent, a forfeiture species covered by section 1953, from nonforfeiture covenants such as a right of reconveyance enforceable in equity (1958 McKinney's Session Laws of NY, at 1709). Parenthetically, an intention to preserve a future interest on a condition subsequent must be periodically refiled, which may shortly extinguish many such future interests through inadvertent failure to file (Real Property Law § 345; see, 2A Powell, Real Property ¶ 271 [3], at 20-32; Board of Educ. v Miles, 15 N.Y.2d 364, supra).
Finally, therefore, the provision at issue is cogently distinguishable in character and effect from conditions in instruments which provide a right of reentry, which effect a forfeiture, and which use language reflecting a clear intent to create a future interest sufficient to overcome the presumption against conditions subsequent (see, Munro v Syracuse, Lake Shore & N. R. R. Co., 200 NY, at 230, supra; Upington v Corrigan, 151 NY, at 153-154, supra). We, thus, find more reasonable the conclusion that this repurchase provision, characterized in the deed as a "covenant" and lacking a reentry authorization or forfeiture effect, was intended by the parties to create a covenant enforceable in equity.
Denial of summary judgment to both parties leaves the defendant's affirmative defenses to be resolved, as they have not been ruled on by any court thus far. We note also that Supreme Court has the broad, discretionary, equitable power to mold the appropriate remedy under all the circumstances pertaining to this dispute within the framework of this action.
Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, by denying defendant's cross motion for summary judgment and remitting the case to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
KAYE, J. (dissenting).
The Court is called upon to decide whether the repurchase provision in issue is a condition subsequent or a restrictive covenant, a determination that obviously has significant impact on plaintiff's remedy.
If  as plaintiff grantor, Suffolk Business Center (SBC), argues  defendant violated a covenant or contract right, the *391 remedy will be specific performance by reconveyance of property or the monetary equivalent. If, on the other hand, the provision is a condition subsequent, enforcement must take place through the procedural vehicle of RPAPL 1953. Under the statute, defendant's interest could be divested only on a determination that plaintiff possessed a substantial interest in enforcing its right. Moreover, the statute states that if it appears that the relief provided would be inequitable, Supreme Court may shape an appropriate remedy in order to avoid forfeiture of improved property or other unjust enrichment. A conclusion that a condition subsequent was intended would require dismissal of SBC's complaint without prejudice to bringing the appropriate RPAPL 1953 proceeding, which in fact has already been commenced by SBC and stayed pending the determination of this appeal.
I agree wholeheartedly with the majority's premises. The parties' intent is controlling in determining whether they created a restrictive covenant or condition subsequent. Moreover, all contractual obligations of these parties merged into the deed, and the rights of SBC flow only from the deed; thus, we must determine the parties' intent from the words of the deed and the surrounding circumstances. These premises, however, together with the time-honored proposition that equity abhors a forfeiture, lead me to the opposite conclusion: Supreme Court and the Appellate Division were clearly correct in holding that the parties intended to create a condition subsequent enforceable under RPAPL 1953, not a contract right enforceable in specific performance.

I.
With the fundamental premises in mind, a brief review of the facts points to affirmance of the Appellate Division order.
In 1978, SBC conveyed an eight-acre tract to defendant, Applied Digital Data Systems (ADDS), for $408,000. ADDS already owned an adjacent seven-acre tract which housed its manufacturing, engineering and general office operations. A provision contained in the deed provided that ADDS would construct a warehouse addition to its existing building  12,600 square feet of which was to be located on the subject premises  and a separate office facility. Construction was to commence within one year of the date of the deed and was to be completed with due diligence. If ADDS failed to perform, SBC was given the option of repurchasing the property at the *392 original purchase price. According to SBC, the provision served important purposes within the context of the development of its industrial park: to accelerate sales (and thereby increase the price of other property) and to ensure that lots were sold to purchasers who intended to construct substantial improvements, not to mere speculators.
In 1978 and 1979, ADDS constructed a 35,000-square-foot warehouse addition to its existing facility  18,500 square feet on the subject premises (50% more than required in the deed). Underground utilities, parking facilities, paving and landscaping work were also completed at that time. These improvements cost ADDS $700,000.
Nearly six years later  on December 21, 1984  SBC notified ADDS that it was in breach of the construction obligation for failure to build the office facility, that SBC was therefore exercising its right to repurchase at the original price of $408,000, and scheduling the closing in 30 days. At the time notice was sent by SBC, all marketable parcels in the original 300-acre tract had been sold. In 1985, when SBC tendered the $408,000 to ADDS, SBC's own expert valued the property at $1.7 million. ADDS valued the property at $3.3 million in June 1988, when the summary judgment motion was submitted to the trial court.
On these facts, the majority now holds that the parties intended to create a restrictive covenant, one that gave SBC the option to repurchase the subject parcel at cost if the specified improvements were not made within the prescribed period. That analysis is flawed, as the ensuing sections demonstrate.

II.
As the majority acknowledges, in deciding the issue of intent "particular words alone are not determinative and no particular words need be used" (majority opn, at 388; see, Towle v Remsen, 70 N.Y. 303, 311). The Court then concludes that the repurchase provision was intended as a restrictive covenant based on: the absence of traditional future interest language (id., at 388); failure of the parties to explicitly reserve a right to reenter (id., at 388-389); and the conclusion that enforcement of the provision would not effect a forfeiture of defendant's estate (id., at 389).
Under the majority's own standard, the first two grounds for deciding the issue of intent are not determinative. As for *393 the third, there can be no question that enforcement of the repurchase provision would have the effect of terminating the defendant's estate by operation of law, and therefore work a forfeiture of that estate.
Turning to the majority's concern with the absence of particular words from the provision in issue, the reservation of an express right to "reenter" is not necessary (see, Post v Weil, 115 N.Y. 361, 371). That point can have no clearer expression than the 1966 amendments to the EPTL, which replaced the term "right of reentry" with "right of reacquisition" (L 1966, ch 952, adding EPTL 6-4.6). The changes in language were made to eliminate "historical nomenclature which has become obsolete" (Report of Commn in Law of Estates on Estates, Powers and Trusts Law, 1966 McKinney's Session Laws of NY, at 2936, 2942).
Rather than emphasizing the absence of "magic words" in the repurchase provision  an exercise we all agree is of little value in determining intent  the analysis should turn on the words used in the context of the parties' transaction. That these parties intended to create a condition subsequent, rather than a covenant, is evident from the characteristics of the interest created  a personal right exercisable at the option of the grantor.
Like a covenant, a condition subsequent runs with the burdened land. But while the benefit of the covenant may also run with the land, the benefit of a condition subsequent is always personal to the grantor (see, Post v Weil, 115 NY, at 372-373, supra; 1A Warren's Weed, New York Real Property, Conditions and Limitations, §§ 1.04, 5.07).
A personal right to reacquire the property was created in the deed over to ADDS, indicating that a condition subsequent was intended, not a covenant. The parties provided in the deed that the benefits of other restrictions  prohibiting certain uses of the subject premises, such as for a tavern or banking institution  were to run with the retained land. The repurchase provision, by contrast, contained no such limitation on the right of enforcement, thereby indicating that the parties intended to create a personal benefit in SBC.
The nature of the repurchase provision further indicates an intent to create a condition subsequent. Contrary to the majority's emphasis on SBC's "discretionary option" to repurchase the land (majority opn, at 389) as a basis for finding a covenant, the discretionary nature of the right to reacquire *394 the property only serves to support the conclusion that a condition subsequent was intended. Indeed, one of the distinguishing characteristics of a condition subsequent is that the fee estate is terminated "only at the option of the grantor" (2 Powell, Real Property ¶ 188 [emphasis in original]; Upington v Corrigan, 151 N.Y. 143, 153 [when condition occurred, it became optional with the grantor to have the forfeiture declared]).
Finally, as strong support for concluding that the provision created a covenant, the majority relies on its conclusion that exercise of the repurchase option would not work a forfeiture of defendant's estate. The majority claims that repayment of the purchase price avoids a forfeiture as that term of art is usually understood in such matters (majority opn, at 389). The Court cites no authority for a definition of that term, and its conclusion is erroneous.
The Law Revision Commission defined forfeiture as related to "a restriction on the use of land under which the estate subject to the restriction is terminated by operation of law, either automatically or at the election of the grantor." (1958 Report of NY Law Rev Commn, at 226, reprinted in 1958 McKinney's Session Laws of NY, at 1708.) Under the common law, if a condition subsequent were found to exist, the court had no authority to change its terms and would be required to order the conveyance. Emphasis is on the inevitable loss of the estate by operation of law, which often involves a windfall for the grantor (see, e.g., RPAPL 1953 [3] [justice may require that the court "avoid a forfeiture of the value of improvements or other unjust enrichment"]).
The majority cites to the report made by the Law Revision Commission in support of the amendments to the Real Property Law made in 1958, for the proposition that repurchase provisions must be characterized as "nonforfeiture." Absence of "forfeiture" leads the majority to conclude that no condition subsequent was intended.
Examination of the relevant authority, however, establishes that a forfeiture would result if the repurchase provision were specifically enforced. The case cited by the Law Revision Commission, Teachers Coll. v Goldstein (273 App Div 11, affd 297 N.Y. 969), was a cy pres case that did not involve any discussion of a condition subsequent. The Law Revision Commission merely pointed out that such agreements may resemble nonforfeiture restrictions. Obviously, the facts and circumstances *395 at the time of the creation of the interest must be examined in order to determine forfeiture.
That was precisely the course taken by the court in Pacamor Bearings v British Am. Dev. Corp. (108 AD2d 191), where the provision called for the repurchase of the land for $35,000 per acre if a certain facility was not under construction within two years of the transfer. The court was faced with the issue whether the relevant language created a condition subsequent or a covenant running with the land. Citing the need for additional facts to determine the intent of the parties, the court denied summary judgment.
It is a clear indication that a condition subsequent was intended when the continued enjoyment of the estate is made dependent upon the performance of a certain stipulation (Munro v Syracuse, Lake Shore & N. R. R. Co., 200 N.Y. 224, 230; Craig v Wells, 11 N.Y. 315, 320-321). A "forfeiture" takes place when the condition is violated, enjoyment of the estate is terminated and the property is reclaimed (see, Graves v Deterling, 120 N.Y. 447, 457).
There can be no doubt that defendant's estate was intended to depend on its fulfillment of the building requirement. As SBC's counsel and secretary, who participated in the transaction, testified, SBC "intended only to sell property to purchasers who were going to construct a substantial improvement on the property." If no construction was undertaken within the stated period, the intention was that the parties would return to their original positions  as if the conveyance had never occurred. In sum, ADDS would forfeit its right to continued enjoyment of the estate, albeit upon the repayment of the original purchase price.
Any test other than one that looks to the intent of the parties to have the estate terminate upon failure of the condition or stipulation would require the courts to establish a baseline figure for repurchase agreements. Should the rule be that repayment of the original purchase price  no matter what the increase in value due to the grantee's efforts  always denotes a nonforfeiture restriction? SBC's only attempt to distinguish Pacamor is based on the fact that the relevant provision there was contained solely in the deed, not in the governing contract. We agree with the majority that only the deed provision survives in the present case, making plaintiff's distinction inapplicable. Rather, the court must look to the facts surrounding the transaction and the effect of enforcement *396 on the grantee's estate  in this case the mandatory reconveyance of improved property for a fraction of its fair market value, or payment of the equivalent in money damages. Such a result, if ordered by the court, would indeed be forfeiture.[*]

III.
Where the intent of the parties is not plainly manifested, courts will construe words of limitation as covenants in order to avoid the harsh consequences of forfeiture that sometimes result from enforcement of a condition subsequent. That very rule of construction, however, in this case argues for concluding that the language creates a condition subsequent.
The policy that courts will strive to avoid forfeiture and therefore interpret ambiguous provisions as creating covenants rather than conditions was applied with vigor prior the 1958 revisions to the Real Property Law (see, e.g., Lipton v Bruce, 1 N.Y.2d 631, 637; Munro v Syracuse, Lake Shore & N. R. R. Co., 200 NY, at 230, supra). That policy must now be reevaluated in light of radical amendments to the statute (see, Glasser, Practice Commentary, McKinney's Cons Laws of NY, Book 17B, EPTL 6-4.6, at 86 [revisions, including RPAPL 1953, "radically affect the common law learning on the right of reacquisition" incident to a fee on condition subsequent]).
Under the revised RPAPL 1953, one seeking to enforce a right of reentry (now known as a "right of reacquisition" under EPTL 6-4.6) must bring an action to compel conveyance of the property. The statute further provides that the relief requested  conveyance  will only be granted upon a showing that plaintiff has a "substantial interest in enforcement of the restriction." (RPAPL 1953 [3].) Finally, the statute grants Supreme Court broad equitable power to "grant alternative relief" or impose additional conditions "as justice may require." (RPAPL 1953 [3].) These broad powers were granted to avoid "the chief evil of forfeiture restrictions," namely their immunity to the doctrine of relative hardship and the unavailability *397 of substitute forms of relief such as money damages (see, 1958 Report of NY Law Rev Commn, at 233, reprinted in 1958 McKinney's Session Laws of NY, at 1713). With the "chief evil" exorcised, mechanical application of the nonforfeiture policy may actually undermine the goals of the revised statute.
The inapplicability of the policy to the present case is amply demonstrated by the parties' respective positions. It is the grantee that seeks to have the provision interpreted as a condition subsequent, while the grantor argues that it is a covenant or a contract right. Clearly, SBC seeks to avoid the strictures placed upon the enforcement of the right of reacquisition by RPAPL 1953  namely the showing of "substantial interest" in enforcement. Rather, SBC demands specific performance of the contract right, working the very inequity that section 1953 was intended to alleviate.
I therefore dissent.
Order modified, etc.
NOTES
[*] Contrary to the majority's characterization (majority opn, at 389), it is not intended that forfeiture be determined by reference to events occurring subsequent to creation of the interest. Rather, consistent with the analysis of the parties' intent, it must be determined if defendant's estate was meant to terminate by operation of law upon nonperformance of the condition. That this might lead to loss of valuable improvements by the one in possession indicates only that the forfeiture would work an inequitable hardship that should be avoided if possible (see, RPAPL 1953 [3]).